IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GRAND ELECTRIC, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CV3160 |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | MEMORANDUM AND ORDER ON |
| ELECTRICAL WORKERS LOCAL 265, | ) | MOTIONS FOR SUMMARY JUDGMENT |
| NATIONAL ELECTRICAL BENEFIT | ) | AND MOTIONS TO CONTINUE |
| FUND, DAKOTAS & WESTERN | ) | |
| MINNESOTA ELECTRICAL HEALTH & | ) | |
| WELFARE FUND, INTERNATIONAL | ) | |
| BROTHERHOOD OF ELECTRICAL | ) | |
| WORKERS 265 VACATION FUND, | ) | |
| LINCOLN ELECTRICAL JOINT | ) | |
| APPRENTICESHIP & TRAINING TRUST | ) | |
| FUND, TRUSTEES OF THE NATIONAL | ) | |
| ELECTRICAL BENEFIT FUND, | ) | |
| TRUSTEES OF DAKOTAS & WESTERN | ) | |
| MINNESOTA ELECTRICAL HEALTH & | ) | |
| WELFARE FUND, TRUSTEES OF | ) | |
| DAKOTAS AREAWIDE IBEW-NECA | ) | |
| SAVINGS AND RETIREMENT PLAN, | ) | |
| TRUSTEES OF THE INTERNATIONAL | ) | |
| BROTHERHOOD OF ELECTRICAL | ) | |
| WORKERS 265 VACATION FUND, | ) | |
| TRUSTEES OF THE LINCOLN | ) | |
| ELECTRICAL JOINT APPRENTICESHIP | ) | |
| & TRAINING TRUST FUND, and | ) | |
| DAKOTAS AREAWIDE IBEW-NECA | ) | |
| SAVINGS AND RETIREMENT PLAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Now before me are a motion for summary judgment filed by Plaintiff Grand Electric, LLC (filing 70); a motion for summary judgment filed by Defendant International Brotherhood of Electrical Workers, Local 265 (filing 89); a motion to continue filed by Defendants Dakotas and

1

Western Minnesota Electrical Health and Welfare Fund, Trustees of Dakotas and Western Minnesota Electrical Health and Welfare Fund, Dakotas Areawide IBEW-NECA Savings and Retirement Plan, and Trustees of the Dakotas Areawide IBEW-NECA Savings and Retirement Plan (filing 83); and a motion to continue filed by Defendants International Brotherhood of Electrical Workers, Local 265; International Brotherhood of Electrical Workers 265 Vacation Fund; Trustees of International Brotherhood of Electrical Workers 265 Vacation Fund; National Electrical Benefit Fund; Trustees of the National Electrical Benefit Fund; Lincoln Electrical Joint Apprenticeship & Training Trust Fund; and Trustees of Lincoln Electrical Joint Apprenticeship & Training Trust Fund (filing 92).  My analysis of these motions follows.

## I.  BACKGROUND

On or about January 10, 2005, Grand Electric, LLC (Grand Electric) signed a Letter of Assent to be bound by an agreement between the Lincoln Division, Nebraska Chapter, NECA, Inc. ("the Chapter") and the International Brotherhood of Electrical Workers, Local 265 (Local 265).  (See Pl.'s Index, filing 72, Exs. 3, 5.)  The plaintiff and defendants refer to this agreement as the "Inside Collective Bargaining Agreement" or "Inside Wireman Agreement," (see filing 71 at 1, ¶¶ 1-2; filing 90 at 8, ¶ 3); I shall refer to it as the "Inside Agreement."  The Inside Agreement is a multi-employer agreement that requires signatory employers, such as Grand Electric, to contribute to the International Brotherhood of Electrical Workers 265 Vacation Fund, the National Electrical Benefit Fund, and the Lincoln Electrical Joint Apprenticeship & Training Trust Fund (collectively, the "Electrical Funds"),[1] and to the Dakotas and Western Minnesota Electrical Health and Welfare Fund and the Dakotas Areawide IBEW-NECA Savings and Retirement Plan (collectively, the "Dakotas Funds").[2]  (See Pl.'s Index, filing 72, Ex. 3; Local

---

[1] The Trustees of International Brotherhood of Electrical Workers 265 Vacation Fund, the Trustees of the National Electrical Benefit Fund, and the Trustees of Lincoln Electrical Joint Apprenticeship & Training Trust Fund will be referred to collectively as the "Electrical Fund Trustees."

[2] The Trustees of Dakotas and Western Minnesota Electrical Health and Welfare Fund and the Trustees of the Dakotas Areawide IBEW-NECA Savings and Retirement Plan will be referred to collectively as the "Dakotas Funds Trustees."

265's Index, filing 91, Ex. 1, Burge Decl. ¶ 7.)

Grand Electric's Letter of Assent authorized the Chapter "as [Grand Electric's] collective bargaining representative for all matters pertaining to" the Inside Agreement. (See Pl.'s Index, filing 72, Ex. 5 at 1.) Section 1.6 of the Inside Agreement states, "All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement," and, "In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee." (See Pl.'s Index, filing 72, Ex. 3 at 3.)[3] Section 1.8 states, "Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication." (Id.)

The Inside Agreement states that it "shall remain in effect until August 31, 2010, unless otherwise specifically provided for" therein, and that the Agreement "shall continue in effect from year to year thereafter, from September 1st through August 31st of each year, unless changed or terminated in the way later provided" therein. (See Pl.'s Index, filing 72, Ex. 3 at 2.) Section 1.2 of the Agreement outlines the procedure that "an Employer withdrawing representation from the Chapter or not represented by the Chapter" must use if it "desir[es] to change or terminate" the Inside Agreement. (Id. at 2-3.)

On April 13, 2009, Grand Electric signed a Letter of Assent to be bound by a "Sound & Communications Agreement" between the Chapter and Local 265. (See Pl.'s Index, filing 72, Exs. 4, 6.) Like the Inside Agreement, the Sound & Communications Agreement is a multi-employer agreement that requires Grand Electric to contribute to the Electrical Funds and the Dakota Funds. (See Pl.'s Index, filing 72, Ex. 4; Local 265's Index, filing 91, Ex. 1, Burge Decl. ¶ 7.)[4] By signing the Letter of Assent to the Sound & Communications Agreement, Grand

---

[3] Section 1.5 of the Inside Agreement establishes "a Labor-Management Committee of three representing the Union [(i.e., Local 265)] and three representing the Employers [(e.g., Grand Electric)]." (See Pl.'s Index, filing 72, Ex. 3 at 3.) The Union representatives on the committee are selected by the Union, and the "management" representatives are selected by the Chapter. (Id.)

[4] The Dakota Funds' and the Dakota Funds Trustees' response to Grand Electric's motion for summary judgment states that the Sound & Communications Agreement is "immaterial as to

Electric authorized the Chapter "as its collective bargaining representative for all matters pertaining to" the Agreement. (See Pl.'s Index, filing 72, Ex. 6.) The Sound & Communications Agreement includes provisions analogous to those appearing in the Inside Agreement concerning the formation of a Labor-Management Committee, the adjustment of grievances, and the referral of unresolved matters to the Council on Industrial Relations for the Electrical Contracting Industry. (Compare Pl.'s Index, filing 72, Ex. 3 at 3 with Pl.'s Index, filing 72, Ex. 4 at 5-6.)

The Sound & Communications Agreement states that it "shall remain in effect until November 30, 2011, unless otherwise specifically provided for" therein, and that it "shall continue in effect from year to year thereafter, from December 1st through November 30th each year, unless changed or terminated in the way later provided" therein. (See Pl.'s Index, filing 72, Ex. 4 at 4.) The procedures that "[e]ither party or an Employer withdrawing representation from the Chapter or not represented by the Chapter" must use "to change or terminate [the Sound & Communications] Agreement" are set forth in Section 1.02 of the Agreement. (See id. at 4-5.)

Grand Electric claims that it has employed one or fewer persons in "the Inside bargaining unit" since February 5, 2009, and that it has newer employed more than one person in "the Sound & Communications bargaining unit." (See, e.g., Pl.'s Index, filing 72, Ex. 1, A. Ingwerson Aff. ¶¶ 11-12.) Grand Electric also claims that it has had one or fewer persons doing "Inside work" since February 5, 2009, and one or fewer persons doing "Sound & Communications work" since it signed the Letter of Assent on April 13, 2009. (See, e.g., id. ¶¶ 16-17.) It adds that "[a]s of July 23, 2009," it had no "intention of employing any additional employees" in either the Inside bargaining unit or the Sound & Communications bargaining unit. (See id. ¶¶ 31, 36.) The defendants submit that they can neither dispute nor confirm Grand Electric's claims about these matters without engaging in "further discovery." (See filing 86 at 2-8; filing 90 at 2-6. See also filings 83-85 and filings 92-94.)

On July 23, 2009, Tammy Ingwerson, President of Grand Electric, wrote to Clinton R.

---

the Dakotas Funds." (See filing 86 at 5, 7, 9. See also id. at 11.) I note, however, that the Sound & Communications Agreement states on page 32 that employers are required to contribute to the Dakota Funds. (See Pl.'s Index, filing 72, Ex. 4 at 32.)

4

Burge, Business Manager of Local 265, and informed him that Grand Electric "was withdrawing and cancelling its letter of assent to the Inside Agreement" effective July 24, 2009. (Pl.'s Index, filing 72, Ex. 1, A. Ingwerson Aff. ¶ 32; see also Pl.'s Index, filing 72, Ex. 7.) Her letter to Burge states, in part, as follows:

> This cancellation is based on the fact that Grand Electric, LLC has, for some period of time, employed one (1) or fewer employee(s) in the bargaining unit and does not have any intention of employing any additional employees in the Local 265 bargaining unit in the future. Based upon having reached a one man bargaining unit status, Grand Electric, LLC cancels the collective bargaining agreement referred to above and terminates all current and future contractual obligations and relationships with IBEW Local 265 effective July 24, 2009.

(Pl.'s Index, Ex. 7.) Also on July 23, 2009, Tammy Ingwerson sent a second letter to Burge stating that Grand Electric "was withdrawing and canceling its letter of assent to the Sound & Communications Agreement," effective July 24, 2009, for the same reasons. (Pl.'s Index, filing 72, Ex. 1, A. Ingwerson Aff. ¶ 37; see also Pl.'s Index, filing 72, Ex. 8.)

On July 27, 2009, Grand Electric filed a complaint against Local 265, the Dakotas Funds, the Dakotas Funds Trustees, the Electrical Funds, and the Electrical Funds Trustees.[5] (See generally Compl., filing 1.) Grand Electric seeks "a declaratory judgment . . . that [it] properly and effectively repudiated and terminated [the] collective bargaining agreements which terminated any obligation that Grand Electric had to contribute fringe benefits to Defendant Funds or Fund Trustees." (Id. ¶ 19; see also id. ¶¶ 33, 41.)

Local 265 filed an answer to the complaint on October 15, 2009. (See generally filing 40.) Its answer includes a counterclaim for an order compelling Grand Electric to submit to "grievance/arbitration" Grand Electric's "claim that it effected a valid repudiation and voiding of the . . . Agreements." (Counterclaim, filing 40, at 13.) In the alternative, Local 265 seeks a determination from this court "that Grand Electric's invalid repudiation was in breach of the . . . Agreements" and an order compelling "arbitration of the appropriate remedy for Grand Electric's

---

[5] The complaint also named Dakotas Areawide IBEW-NECA Vacation & Holiday Plan and Trustees of the Dakotas Areawide IBEW-NECA Vacation & Holiday Plan as defendants, (see Compl., filing 1), but those defendants have been dismissed from this action, (see Notice of Dismissal, filing 44).

breach of the Agreements." (Id.)

The Electrical Funds and Electrical Funds Trustees filed an answer to the complaint on March 15, 2010. (See filing 61.) Their answer includes a counterclaim alleging that Grand Electric has breached the Inside Agreement and the Sound & Communications Agreement by failing "to report in a timely manner the hours of covered work performed by its employees since July 2009 and [by failing] to pay such contributions, in a timely manner, that were due and owing thereon to the Funds." (Counterclaim, filing 61, at 13.)[6]

On April 19, 2010, the Dakotas Funds and Dakotas Funds Trustees filed an amended answer and counterclaims in response to the plaintiff's complaint. (See generally filing 77.) Counterclaim I alleges that Grand Electric "breached the terms of the [Inside] Agreement and Declarations of Trust by failing to submit fringe fund reports due for the months of August, September, October, November, December 2009 and January and February 2010 accurately identifying all hours worked by employees covered by the Agreements, employees performing covered work, or performing work within the jurisdiction of the Agreements." (See Counterclaim, filing 77, at 6.) Counterclaim II alleges that Grand Electric must allow the Dakotas Funds Trustees to "audit" certain records. (Id. at 7-8.) It also alleges that Grand Electric is liable for any delinquent fringe benefit contributions owed between January 10, 2005, and March 16, 2010. (See id. at 9.)

## II. STANDARD OF REVIEW

A motion for summary judgment shall be granted by the court "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

---

[6] On April 18, 2010, the Electrical Funds and the Electrical Funds Trustees filed a motion "to amend their counterclaim to add a claim available under 29 U.S.C. § 1132(a) to audit Grand Electric's records pursuant to the applicable collective bargaining agreement(s), trust agreements, and the law and to seek all available damages arising out of the audit." (Filing 76, ¶ 2.) This motion was granted, and the Electrical Funds and Electrical Funds Trustees were ordered to file their amended answer and counterclaims on or before April 26, 2010. (Filing 78.) It appears, however, that they have failed to file their amended answer and counterclaims.

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, and "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 256 (citing Fed. R. Civ. P. 56(e)).

### III.  ANALYSIS
#### A.  Local 265's Motion for Summary Judgment

In response to Grand Electric's complaint, Local 265 filed a counterclaim to compel Grand Electric to arbitrate the question of whether it validly terminated the Inside and Sound & Communications Agreements. Local 265 has now moved for summary judgment on its counterclaim. (See filing 89.) For the reasons explained below, I find that Local 265's motion for summary judgment must be denied.

The central question raised by Local 265's motion for summary judgment is whether the parties to the Inside Agreement and Sound & Communication Agreement agreed, in sections 1.6 and 1.06 of those Agreements (respectively), to submit disputes about the termination of the Agreements to arbitration. Citing AT&T Technologies, Inc. v. Communications Workers of America, 465 U.S. 643 (1986), Local 265 argues that courts must apply "a strong presumption of arbitrability" when "deciding whether parties have agreed to arbitrate a grievance." (See filing 90 at 14-15.) In AT&T Technologies, the Court reviewed a number of principles set forth in the

7

Steelworkers Trilogy[7] of cases, including the following:

> [I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder . . . ." In such cases, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."

AT&T Technologies, 475 U.S. at 650 (quoting Warrior & Gulf Navigation Co., 363 U.S. at 582-83, 584-85) (citations omitted). Relying heavily on this language, Local 265 submits that "[i]t is clear . . . that the parties have agreed to arbitrate Grand Electric's claim that it allegedly achieved a one-man unit and does not have to abide by the Agreements." (Filing 90 at 15.) Local 265 states,

> Grand Electric became signatory to the Inside . . . Agreement in 2005 and to the Sound Agreement in 2009. The Agreements require Grand Electric to contribute to the Funds based on hours worked in covered employment by Grand Electric's employees. The Agreements clearly provide "[a]ll grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement." Neither Agreement expressly excludes from the grievance/arbitration procedures the issue of whether or not a signatory employer truly has a one-man unit. Therefore, in accordance with the clear language of the Agreements, there is no genuine issue of material fact that Grand Electric's failure to abide by the terms of the Agreements must be arbitrated.

(Id. (citations omitted).) In response to Local 265's argument, Grand Electric claims that because it provided "notice sufficient to terminate its letters of assent to both the Sound & Communications and Inside Agreements" on or about July 23, 2009, it "was no longer bound by the requirements of either [Agreement]" as of that date. (Filing 99 at 14.)

Preliminarily, I note that the presumption of arbitrability discussed in AT&T

---

[7] Steelworkers v. American Mfg. Co., 363 U.S. 564 (1960); Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960).

Technologies does not replace the need for an examination of the portions of the agreements that allegedly require the submission of a particular dispute to arbitration. As the Supreme Court observed, "[t]he first principle gleaned from the [Steelworkers] Trilogy is that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT&T Technologies, Inc., 475 U.S. at 648 (quoting Warrior & Gulf Navigation Co., 363 U.S. at 582). See also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) ("[T]he arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute. . . . [A]rbitration . . . is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration."). My analysis must begin, therefore, with an examination of the portions of the Agreements that, according to Local 265, address the arbitration of disputes about the termination of the Agreements. I shall apply the presumption of arbitrability only if I am persuaded that the relevant sections of the Agreements were "validly formed[,] . . . cover[] the dispute in question[,] and [are] legally enforceable." Granite Rock Co. v. International Brotherhood of Teamsters, No. 08-1214, slip op. at 10 (U.S. June 24, 2010). See also id. at 13 ("We have applied the presumption favoring arbitration, in FAA and in labor cases, only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate . . . is . . . best construed to encompass the dispute.").

Because Local 265 argues that section 1.6 of the Inside Agreement and section 1.06 of the Sound & Communications Agreement require disputes about the termination of the Agreements to be submitted to arbitration, (see filing 90 at 15 (citing Local 265's Statements of Material Fact, filing 90, ¶¶ 7, 10)), I begin by examining those sections of the Agreements. The sections, which are identically-worded in each Agreement, state,

> All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the local Labor-Management Committee.

(See Pl.'s Index, filing 72, Ex. 3 at 3; Pl.'s Index, filing 72, Ex. 4 at 5.) The phrase, "All grievances or questions in dispute," is indeed broad; however, its breadth is limited by the language indicating that the questions in dispute be "adjusted by the duly authorized

representative of each of the parties to this Agreement." In the first place, it is not clear whether Grand Electric is a "party," as that term is used in the Agreements, after it issued written notice of its withdrawal of its Letters of Assent.[8] Nor is it clear that Grand Electric continues to have a "duly authorized representative," because the now-withdrawn Letters of Assent provided the authorization for the Chapter to act as Grand Electric's "collective bargaining representative for all matters contained in or pertaining to" the Agreements. (See Pl.'s Index, filing 72, Exs. 5-6.) Perhaps more importantly, section 1.2 of the Inside Agreement and section 1.02 of the Sound & Communications Agreement seem to address the specific question at issue here, i.e., the procedure to be followed by an "Employer withdrawing representation from the Chapter" who "desir[es] to . . . terminate [the] Agreement[s]." (See Pl.'s Index, filing 72, Ex. 3 at 2; Pl.'s Index, filing 72, Ex. 4 at 4.) Local 265 has not argued that these sections (as opposed to sections 1.6 and 1.06) require Grand Electric to arbitrate disputes about the termination of the Agreements. Nor has it explained why sections 1.2 and 1.02 should be disregarded and sections 1.6 and 1.06 should be construed to cover disputes about the termination of the Agreements. In a similar vein, the Letters of Assent describe the mechanism for their termination by Grand Electric, (see Pl.'s Index, filing 72, Exs. 5-6), and Local 265 has not argued that Grand Electric has failed to comply with that process.

In short, a plain reading of the Agreements and the Letters of Assent reveals several matters that have not been addressed by Local 265 in its brief supporting its motion for summary judgment. Instead, Local 265 simply claims that sections 1.6 and 1.06 must be presumed to require arbitration of disputes about the termination of the agreement.

Under the circumstances–and particularly in light of Local 265's failure to address the implications of 1) Grand Electric's withdrawal of its Letters of Assent, and 2) section 1.2 of the Inside Agreement and section 1.02 of the Sound & Communications Agreement–I am not

---

[8] According to Local 265's own evidence, the "parties" to the Agreements are the Chapter and Local 265–not Grand Electric. (See Local 265's Index, filing 91, Ex. 1, Burge Decl. ¶¶ 5-6.) Also, I note that Section 1.2 of the Inside Agreement and Section 1.02 of the Sound & Communications Agreement suggest that the term "party" is distinguishable from "an Employer withdrawing representation from the Chapter." (See Pl.'s Index, filing 72, Ex. 3 at 2 & Ex. 4 at 4.)

persuaded that section 1.6 of the Inside Agreement and section 1.06 of the Sound & Communications Agreement require Grand Electric to submit to arbitration disputes about the termination of the Agreements. Because Local 265 has not shown that sections 1.6 and 1.06 are "best construed" to require arbitration of such disputes after an Employer has withdrawn representation from the Chapter, it is not owed the benefit of the presumption of arbitrability. Granite Rock Co., No. 08-1214, slip op. at 13. See also At&T Technologies, Inc., 475 U.S. at 648; First Options of Chicago, Inc., 514 U.S. at 943. Local 265's motion for summary judgment must therefore be denied.

### B. Grand Electric's Motion for Summary Judgment and Defendants' Motions to Continue

Grand Electric argues that it is entitled to a summary judgment declaring that "its termination of the [Agreements] was proper and valid" and that "any obligation [Grand Electric] had to make fringe benefit contributions to the Defendant Funds or Defendant Trustees ended when it terminated its letters of assent to the [Agreements]." (Filing 71 at 9.) In the alternative, "Grand Electric seeks a judgment determining that its obligation to make fringe benefit contributions terminates on the effective termination date of each of the collective bargaining agreements (i.e., August 31, 2010 for the Inside Agreement and November 30, 2011 for the Sound & Communications Agreement)." (Id. at 10.) For the following reasons, I shall postpone ruling on the bulk of Grand Electric's motion for summary judgment.

Grand Electric argues first that it is entitled to a declaration that it properly terminated the Agreements on or about July 23, 2009, because the "one-man unit" exception allows it to repudiate the Agreements without violating the National Labor Relations Act, 29 U.S.C. §§ 151 et seq. (See filing 71 at 11-12.) In support of this argument, Grand Electric has submitted evidence showing that it "reached 'one-man unit' status for the purposes of the Inside Agreement" on or about February 5, 2009, and that it "has always been at one-man status in the Sound & Communications bargaining unit." (See filing 71 at 14-16.) In response, the defendants argue that they must be allowed to conduct discovery before they can dispute these facts, (see filings 86 at 2-8; filing 90 at 2-6), and they have moved for continuances pursuant to Federal Rule of Civil Procedure 56(f), (see filings 83, 92).

11

"Rule 56(c) does not require the completion of all discovery before a court may enter summary judgment." Roark v. City of Hazen, Ark., 189 F.3d 758, 762 (8th Cir. 1999). Generally speaking, however, a summary judgment should not be entered if the non-moving party has not had an adequate opportunity to conduct discovery. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986). "Rule 56(f) permits a party opposing summary judgment to seek a continuance and postpone a summary judgment decision until adequate discovery has been completed." Roark, 189 F.3d at 762 (citation omitted). "When seeking a continuance, . . . the party opposing summary judgment is required to file an affidavit with the district court showing what specific facts further discovery might uncover." Id. More specifically, this affidavit should describe: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." Johnson v. United States, 534 F.3d 958, 965 (8th Cir. 2008).

In support of their Rule 56(f) motion, the Dakotas Funds and Dakotas Fund Trustees have submitted an affidavit that reviews the documents submitted by Grand Electric in support of its "one-man unit" claim and describes the additional discovery that the defendants require in order to frame an adequate response. (See filing 85, Cefalu Aff..)  For example, the Dakota Funds and Dakota Fund Trustees state that they seek to depose Grand Electric's affiants to "discover [(i)] whether . . . all employees were notified of the statements made in the affidavits; (ii) whether employees were also asked to provide affidavits relating to dates of work; (iii) [whether] the names of all employees or any person providing services to the company were disclosed in the affidavit; (iv) what definition of 'Inside work' was used in drafting the affidavit; (v) what contracts or customers used Grand Electric's services during the period in question; and (vi) whether any employees continue to work for Grand Electric, in any capacity, to date." (Id. ¶ 3.) They also seek to explore whether Grand Electric's software and other records might yield "facts potentially undermining statements in both affidavits and the documentation submitted by Plaintiff."  (Id. ¶ 5; see also id. ¶ 6.)  In essence, they seek an opportunity to verify independently the plaintiff's claims concerning bargaining unit size.

The Dakota Funds' and Dakota Funds Trustees' affidavit also describes the efforts that

they have undertaken to obtain the foregoing information, (see id. ¶¶ 4, 6), and explains that this information "could raise genuine issues of material fact on the question of whether Plaintiff Grand Electric truly employed one . . . or fewer employees during all relevant periods," (id. ¶ 7). The affidavit also notes, correctly, that Grand Electric filed its motion for summary judgment "within days of all parties issuing Rule 26(a) Initial Disclosures, and prior to the issuance of the Final Progression Order setting the discovery and trial schedule on April 13, 2010." (Id. ¶ 8.)

   The Dakota Funds and Dakota Funds Trustees have identified the facts that they need in order to frame their opposition to the plaintiff's summary judgment motion, described how they intend to gather these facts, shown that the facts are reasonably expected to raise a genuine issue of material fact, and explained why they were unable to obtain these facts prior to the deadline for their response to the motion for summary judgment. There is no indication that the Rule 56(f) motion has been made for an improper purpose. Indeed, it does not appear that the defendants seek anything more than an opportunity to conduct the sort of discovery that ordinarily occurs in connection with motions for summary judgment. I find, in accordance with Rule 56(f), that there should be a continuance to enable these defendants to undertake discovery. The Dakota Funds and Dakota Funds Trustees request that the continuance extend through August 16, 2010, which is the deadline for completing discovery set forth in the Final Progression Order. (See filing 84 at 2; filing 73 at 2.) This request will be granted.

   For the same reasons, I shall also order a continuance to enable Local 265, the Electrical Funds, and the Electrical Funds Trustees to undertake discovery. (See generally filing 94, Ex. 2, Fletcher Decl.)

   In opposition to the defendants' motions to continue, Grand Electric argues that the defendants seek information that does not pertain to "the relevant time period." (See filing 99 at 9-10.) Grand Electric defines the relevant time period as beginning on July 23, 2009–though it seems to object only to the defendants' requests for information predating January 1, 2009. (See id.) Indeed, Grand Electric claims that it has already "provided Defendants with its payroll information from January 1, 2009 . . . [to] March 2010." (Id. at 10.) In any event, Grand Electric concedes that it must "illustrate that it has maintained a permanent and stable one-man unit" in order to benefit from the one-man unit exception, and it has referred me to a case wherein the

13

stability of the unit was assessed over a two-year period. (Id. (emphasis added) (citing Searls Refrigeration Co., 297 N.L.R.B. 133, 135 (1989)).) Under the circumstances, I am not persuaded that information predating January 1, 2009, is undiscoverable. Moreover, the defendants are not merely seeking evidence dating prior to January 1, 2009: their request for a continuance is based on a general need to verify the plaintiff's claims about the size of the bargaining units at all relevant times.

Grand Electric also argues that it "has produced all relevant evidence." (Filing 99 at 11.) I have no reason to doubt the sincerity of the plaintiff's claim that it has disclosed all of the records that it deems relevant; nevertheless, the defendants should have an opportunity "to depose Tammy Ingwerson and Andrew Ingwe[r]son concerning the contents of their Affidavits" and the other available documents. (Filing 102 at 5.) They should also have an opportunity to "ensure, through independent verification, whether all employees have been reported on for all hours worked in accordance with the [Agreements]." (Id.)

Finally, Grand Electric argues that delaying this case for the production of documents such as "check registers, monthly bank statements, and [canceled] checks would cause unnecessary delay since these documents are duplicitous, overly broad, burdensome, and largely irrelevant." (Filing 99 at 12.) If, in fact, the defendants engage in abusive practices during the course of discovery, the plaintiff will not be without remedy. The defendants have shown, however, that the plaintiff's motion for summary judgment is based largely on evidence within its exclusive control, and the motion was filed before the defendants had an adequate opportunity to engage in discovery to justify their opposition. A continuance is in order.

Grand Electric also seeks a summary judgment declaring that "any obligation it had to make fringe benefit contributions to the Defendant Funds or Defendant Trustees ended when it terminated its letters of assent to the [Agreements]." (Filing 71 at 9.) It seems to me that such a declaration is contingent upon Grand Electric's ability to secure a declaration that "its termination of the [Agreements] was proper and valid" under the one-man unit exception, and I have ordered a continuance so that the defendants may develop their opposition to such a declaration. Under the circumstances, I shall defer my ruling on the plaintiff's motion for

summary judgment on the issue of its obligation to make payments.[9]

Grand Electric also argues,

> In the alternative, if this Court determines that Grand Electric's obligation to make fringe benefit contributions to Defendant Funds and Defendant Trustees does not end on July 23, 2009, [then] Grand Electric seeks a judgment determining that its obligation to make fringe benefit contributions terminates on the effective termination date of each of the collective bargaining agreements (i.e., August 31, 2010 for the Inside Agreement and November 30, 2011 for the Sound & Communications Agreement).

(Filing 71 at 10; see also id. at 24-25.) It appears that the defendants do not dispute Grand Electric's claim that its obligation to make the contributions ends upon the termination dates specified in the Agreements. Indeed, the Dakota Funds and Dakota Funds Trustees state affirmatively that "[s]ignatory employers are . . . liable for benefits to fringe benefit plans for the term of the written contract." (Filing 86 at 16 (citation omitted).) The remaining defendants, too, base their opposition to Grand Electric's summary judgment motion on "Grand Electric's contractual obligations under the Agreements," and agree that "[t]he Inside . . . Agreement expires in August, 2010," and "[t]he Sound [& Communications] Agreement expires in November, 2011." (See filing 90 at 18.) I conclude that Grand Electric is entitled to a judgment stating that its obligation to continue to make fringe benefit contributions pursuant to the Agreements ends on the effective termination date of each of the Agreements; however, no final judgment will be entered at this time. See Fed. R. Civ. P. 54(b).

---

[9] I am mindful the defendants have argued for the denial of the plaintiff's summary judgment motion on grounds that do not depend upon the granting of a continuance for the purposes of discovery. (See filing 84 at 5 (arguing that "the 'one-man unit' rule relied upon by Grand Electric is not applicable nor valid law in the Eighth Circuit, and that as a matter of law the motion for summary judgment should be denied"); see also filing 86 at 12-17; filing 90 at 19-23.) It will not be necessary to address their argument in order to resolve the plaintiff's motoin for summary judgment, however, if the defendants are able to raise a genuine issue of material fact concerning the applicability of the one-man unit exception. Because a continuance will be granted, the best course is to delay ruling upon the plaintiff's summary judgment motion until discovery has been completed.

**IT IS ORDERED** that:

1. Grand Electric is entitled to summary judgment on its claim that its obligation to continue making benefit contributions pursuant to the Agreements ends on the Agreements' termination dates;

2. in all other respects, my ruling on Grand Electric's motion for summary judgment, filing 70, is deferred until the defendants have had an adequate opportunity to complete discovery;

3. the defendants' motions to continue, filings 83 and 92, are granted; and

4. Local 265's motion for summary judgment, filing 89, is denied.

Dated June 30, 2010.

                BY THE COURT

                s/ Warren K. Urbom
                United States Senior District Judge