IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GRAND ELECTRIC, LLC, | ) |
| Plaintiff, | ) 4:09CV3160 |
| v. | ) |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 265, NATIONAL ELECTRICAL BENEFIT FUND, DAKOTAS & WESTERN MINNESOTA ELECTRICAL HEALTH & WELFARE FUND, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS 265 VACATION FUND, LINCOLN ELECTRICAL JOINT APPRENTICESHIP & TRAINING TRUST FUND, TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND, TRUSTEES OF DAKOTAS & WESTERN MINNESOTA ELECTRICAL HEALTH & WELFARE FUND, TRUSTEES OF DAKOTAS AREAWIDE IBEW-NECA SAVINGS AND RETIREMENT PLAN, TRUSTEES OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS 265 VACATION FUND, TRUSTEES OF THE LINCOLN ELECTRICAL JOINT APPRENTICESHIP & TRAINING TRUST FUND, and DAKOTAS AREAWIDE IBEW-NECA SAVINGS AND RETIREMENT PLAN, | ) MEMORANDUM AND ORDER ON MOTION FOR RECONSIDERATION |
| Defendants. | ) |

On July 14, 2010, Defendant International Brotherhood of Electrical Workers, Local 265 (Local 265) filed a motion for reconsideration of my decision to deny its motion for summary judgment. (See filing 110.) My analysis of this motion is set forth below.

1

## I.   BACKGROUND[1]

On or about January 10, 2005, Plaintiff Grand Electric, LLC (Grand Electric) signed a Letter of Assent to be bound by an "Inside Collective Bargaining Agreement" (the Inside Agreement) between the Lincoln Division, Nebraska Chapter, NECA, Inc. (the Chapter) and Local 265. (See Pl.'s Index, filing 72, Exs. 3, 5.) The Inside Agreement requires signatory employers to contribute to Defendants International Brotherhood of Electrical Workers 265 Vacation Fund, National Electrical Benefit Fund, Lincoln Electrical Joint Apprenticeship & Training Trust Fund, Dakotas and Western Minnesota Electrical Health and Welfare Fund, and Dakotas Areawide IBEW-NECA Savings and Retirement Plan (collectively, the Funds).

Grand Electric's Letter of Assent authorized the Chapter "as [Grand Electric's] collective bargaining representative for all matters pertaining to" the Inside Agreement. (See Pl.'s Index, filing 72, Ex. 5 at 1.) Section 1.6 of the Agreement states, "All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement," and, "In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee." (See Pl.'s Index, filing 72, Ex. 3 at 3.) The Labor-Management Committee consists of three Union representatives and three management representatives, the latter of which are selected by the Chapter. (Id.) Section 1.8 states, "Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication." (Id.) Section 1.2 of the Agreement outlines the procedure that "an Employer withdrawing representation from the Chapter or not represented by the Chapter" must use if it "desir[es] to change or terminate" the Inside Agreement. (See Pl.'s Index, filing 72, Ex. 3 at 2-3.)

On April 13, 2009, Grand Electric signed a Letter of Assent to be bound by a "Sound & Communications Agreement" between the Chapter and Local 265. (See Pl.'s Index, filing 72, Exs. 4, 6.) Like the Inside Agreement, the Sound & Communications Agreement requires Grand Electric to contribute to the Funds. (See Pl.'s Index, filing 72, Ex. 4.) As relevant here, its terms are similar

---

[1] The relevant background is set forth in more detail in the Memorandum and Order on Motions for Summary Judgment and Motions to Continue filed on June 30, 2010. (See filing 109.)

to those appearing in the Inside Agreement. (Compare Pl.'s Index, filing 72, Ex. 3 with Pl.'s Index, filing 72, Ex. 4.)

On July 23, 2009, Grand Electric's president wrote to Local 265's business manager and informed him that Grand Electric "was withdrawing and cancelling its letter[s] of assent" to the Inside Agreement and to the Sound & Communications Agreement effective July 24, 2009. (Pl.'s Index, filing 72, Ex. 1, A. Ingwerson Aff. ¶¶ 32, 37; see also Pl.'s Index, filing 72, Exs. 7, 8.) On July 27, 2009, Grand Electric filed a complaint against Local 265, the Funds, and the Funds Trustees, seeking "a declaratory judgment . . . that [it] properly and effectively repudiated and terminated [the] collective bargaining agreements [and thereby] terminated any obligation that Grand Electric had to contribute fringe benefits to Defendant Funds or Fund Trustees." (See Compl., filing 1, ¶ 19.) Local 265's answer to the complaint includes a counterclaim for an order compelling Grand Electric to submit to "grievance/arbitration" Grand Electric's "claim that it effected a valid repudiation and voiding of the . . . Agreements." (Counterclaim, filing 40, at 13.)

On April 30, 2010, Local 265 filed a motion for summary judgment, arguing that "Grand Electric should be compelled to bring its dispute within the grievance and arbitration provisions" appearing in section 1.6 of the Inside Agreement and section 1.06 of the Sound & Communications Agreement. (Filing 89 at 1-2; filing 90 at 9-10, 15.) I denied Local 265's motion in a memorandum and order filed on June 30, 2010. (See filing 109 at 7-11, 16.) In so doing, I explained that Local 265 failed to show that the relevant sections of the Agreements "are 'best construed' to require arbitration of . . . disputes [about the termination of the Agreements] after an Employer has withdrawn representation from the chapter," and that its motion for summary judgment over-relied on the "presumption of arbitrability" described in AT&T Technologies, Inc. v. Communications Workers of America, 465 U.S. 643, 650 (1986), Granite Rock Co. v. International Brotherhood of Teamsters, 130 S. Ct. 2847, 2858, 2859-60 (2010), and other cases. (See filing 109 at 11; see also id. at 7-10.) Local 265 now asks that I reconsider my decision to deny its motion for summary judgment. (See filings 110-111.)

3

## II. STANDARD OF REVIEW

A "district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." K.C.1986 Ltd. Partnership v. Reade Manufacturing, 472 F.3d 1009, 1017 (8th Cir. 2007) (quoting Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1070 (8th Cir. 1995)). Federal Rule of Civil Procedure 54(b) states that, when an action involves multiple claims or parties, any non-final order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

This court's local rule governing motions for reconsideration states, "Motions for reconsideration are disfavored, and the court will ordinarily deny them without a showing of (1) manifest error in the prior ruling or (2) new facts or legal authority, neither of which could have been brought to the court's attention earlier with reasonable diligence." NECivR 60.1(c).

## III. ANALYSIS

Local 265 argues first that it "could not have reviewed and cited to Granite Rock," which was decided on June 24, 2010, prior to the filing of my order of July 30, 2010, denying its motion for summary judgment. (Filing 111 at 2.) Local 265 submits that its motion for reconsideration is therefore supported by a showing of "new legal authority" that could not have been "brought to the court's attention earlier with reasonable diligence." (Id. (quoting NECivR 60.1(c)).) Although it is true that Granite Rock was decided after the briefing of Local 265's motion for summary judgment had closed, Granite Rock is not authority that escaped my attention. As Local 265 notes in its brief, I cited Granite Rock in my memorandum and order denying its motion. (See filing 111 at 1-2; see also filing 109 at 9, 11.) Moreover, Local 265 does not claim that Granite Rock significantly changed the relevant law. On the contrary, Local 265 states, "The Supreme Court's decision in Granite Rock did not alter the circumstances giving rise to the presumption of arbitrability," and, "Indeed, it reaffirmed those principles." (Filing 111 at 3.) In short, Granite Rock was not neglected in my analysis of Local 265's motion, nor is it the source of a new legal rule that alters that analysis. Under the circumstances, Local 265's call for reconsideration is not particularly compelling.

Nevertheless, and as I noted above, I have the inherent authority to reconsider and modify my order denying Local 265's motion for summary judgment. See K.C.1986 Ltd. Partnership v. Reade Manufacturing, 472 F.3d 1009, 1017 (8th Cir. 2007); see also Fed. R. Civ. P. 54(b). I have reconsidered the order in light of the arguments raised by Local 265 in its motion for reconsideration; however, for the following reasons, I shall not modify the order.

Local 265 argues that "a strong presumption of arbitrability"–that is, a presumption that parties have "agreed to arbitrate a particular labor dispute"–"arises from the very existence of an arbitration clause contained within an agreed upon labor contract." (Filing 111 at 2.) It adds that Granite Rock "reaffirms" the Supreme Court's endorsement of the presumption in its prior cases, (see id. at 2-3 (quoting AT&T Technologies, Inc. v. Communications Workers of America, 465 U.S. 643, 650 (1986), for the propositions that (1) "[d]oubts should be resolved in favor of coverage," (2) "an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and (3) "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail")), and submits that I misapplied the presumption of arbitrability in denying its motion for summary judgment, (id. at 4-5). I find, however, that Local 265's argument closely mirrors the position that the Supreme Court specifically rejected in Granite Rock, i.e., that "the 'national policy favoring arbitration' require[s] that any ambiguity about the scope of the parties' arbitration clause be resolved in favor of arbitrability." 130 S. Ct. at 2855. A detailed review of Granite Rock is in order.

In Granite Rock, the Court determined that the "unusual facts" of the case called for a reemphasis of "the proper framework for deciding when disputes are arbitrable under [the Court's] precedents." 130 S. Ct. at 2856. The Court stated,

> Under that framework, a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute. To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce.

Id. (second emphasis added). The Court then explained that the court of appeals "overread[]" the Court's precedents in applying the presumption of arbitrability within this framework. Id. at 2857.

5

The court of appeals–like Local 265 in the instant case–had taken the position that "where . . . parties concede that they have agreed to arbitrate some matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration."  Id. (internal quotation marks and citations omitted).  The Supreme Court cautioned, however, that "[t]he language and holdings on which [the defendant] and the Court of Appeals rely cannot be divorced from the first principle that underscores all of [the Court's] arbitration decisions: Arbitration is strictly 'a matter of consent,' and thus 'is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration.'"  Id. (citations omitted).  The Court added, "Applying this principle, our precedents hold that counts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."  Id. at 2857-58.   The Court went on to clarify the proper role of the presumption of arbitrability in the framework for deciding when disputes are arbitrable, stating,

> [The defendant] nonetheless interprets some of our opinions to depart from this framework and to require arbitration of certain disputes, particularly labor disputes, based on policy grounds even where evidence of the parties' agreement to arbitrate the dispute in question is lacking.  That is not a fair reading of the opinions, all of which compelled arbitration only after the Court was persuaded that the arbitration agreement was validly formed and that it covered the dispute in question and was legally enforceable. . . .
>
> . . . .
>
> [The defendant] is wrong to suggest that the presumption of arbitrability we sometimes apply takes courts outside our settled framework for deciding arbitrability.  The presumption simply assists in resolving arbitrability disputes within that framework. . . .  Accordingly, we have never held that this policy overrides the principle that a court may submit to arbitration "only those disputes . . . that the parties have agreed to submit."  Nor have we held that courts may use policy considerations as a substitute for party agreement.  We have applied the presumption favoring arbitration, in FAA and in labor cases, only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute.

Id. at 2858-60 (emphasis added) (citations and footnote omitted).

Thus, Granite Rock disposes of Local 265's argument that the presumption of arbitrability is activated by the "very existence of an arbitration clause." (Filing 111 at 2.) It also dispels the related notion that whenever the "parties concede that they have agreed to arbitrate some matters pursuant to an arbitration clause," doubts about the scope of the arbitration clause "should be resolved in favor of arbitration." Granite Rock, 130 S. Ct. at 2857 (internal quotation marks omitted). (See also filing 111 at 2-3 (arguing that "[d]oubts should be resolved in favor of coverage" whenever an arbitration clause exists).) Instead, it clarifies that the presumption of arbitrability cannot be used "as a substitute for party agreement," and it may be applied only when it "reflects . . . a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute." Granite Rock, 130 S. Ct. at 2859-60 (emphasis added).[2] See also id. at 2858 ("[The Court's opinions] compelled arbitration of a dispute only after the Court was persuaded that the parties' arbitration agreement was validly formed and that it covered the dispute in question and was legally enforceable." (Emphasis added)).

Local 265 argues that if courts may only apply the presumption of arbitrability after "first determining that the arbitration provisions 'cover the dispute in question,'" the presumption "becomes unnecessary." (Filing 111 at 5.) Local 265 claims, "If a court first determines that a dispute is covered, then there is no need for a presumption; if a court determines that the dispute is not covered, the presumption also becomes meaningless." (Id.) Preliminarily, I note that the "rationale" criticized by Grand Electric comes directly from the Supreme Court's opinion in Granite Rock. See 130 S. Ct. at 2858. I am not free to disregard the principle that arbitration can be compelled only after I am "persuaded that the arbitration agreement . . . covered the dispute in question," id., or that the presumption of arbitrability applies only when it "derives legitimacy from" a determination that the arbitration provision is "best construed to encompass the dispute," id. at

---

[2] I note parenthetically that Local 265 has not claimed that "a provision clearly and validly committing [the relevant issue] to an arbitrator" exists; it argues solely that sections 1.6 and 1.06 should be presumed to commit the relevant issue to an arbitrator.

2859-60. Moreover, I am not persuaded that Granite Rock renders the presumption of arbitrability "meaningless," as Local 265 suggests. Instead, Granite Rock merely clarifies that if an agreement to arbitrate does not plainly commit a particular issue to arbitration (and is therefore ambiguous), but the court is "persuaded that the parties' arbitration agreement was validly formed and that it covered the dispute in question and was legally enforceable," the court will presume arbitrability and order arbitration unless the opposing party rebuts the presumption. See Granite Rock, 130 S. Ct. at 2858-60.

Local 265 also argues that my memorandum and order denying its motion for summary judgment establishes that, "at the very least," the arbitration provisions at issue are "ambiguous about whether [they] cover the dispute at hand," and Local 265 suggests that ambiguity is a sufficient condition to trigger the presumption of arbitrability. (Filing 111 at 4.) I agree that the relevant provisions are ambiguous in the sense that they do not plainly and specifically commit the dispute at hand to an arbitrator. Granite Rock establishes, however, that although this sort of ambiguity is a necessary condition to trigger the presumption of arbitrability, it is not sufficient: there must also be a determination that the arbitration provision was validly formed, covers the dispute in question, and is legally enforceable. See 130 S. Ct. at 2857-60. The notion that ambiguity is a sufficient condition to compel arbitration "even where evidence of the parties' agreement to arbitrate the dispute in question is lacking" was specifically rejected by the Court. Id. at 2858.

Finally, Local 265 argues that section 1.2 of the Inside Agreement and section 1.02 of the Sound & Communications Agreement have no bearing to the question at hand because "consideration of the . . . Agreements' contract termination provisions is a matter reserved for arbitration." (Filing 111 at 5; see also id. at 4 (arguing that "arbitrators, not courts, must decide defenses that would render an established contract void or voidable, unless a party alleges the arbitration provision is invalid").) It seems to me that Local 265's argument that "contract termination . . . is a matter reserved for arbitration" presupposes the existence of an agreement to commit questions about contract termination and/or withdrawals of asset to arbitration, and Local 265 has not shown that such an agreement exists. Furthermore, I note that in Granite Rock, the Supreme Court found that even if the arbitration clause at issue "could in isolation be read to cover this dispute," other "remaining provisions all but foreclose such a reading." 130 S. Ct. at 2862.

Thus, I am not convinced that it was error for me to consider sections 1.2 and 1.02 of the agreements when determining whether sections 1.6 and 1.06 are "best construed to encompass the dispute" at issue here.  Id. at 2860.

My analysis of Local 265's motion for summary judgment followed the framework outlined in Granite Rock.  First, I explained that my analysis does not begin with an application of the presumption of arbitrability, but rather with "an examination of the portions of the agreements that allegedly require the submission of a particular dispute to arbitration."  (Filing 109 at 9.)  Local 265 claimed that section 1.6 of the Inside Agreement and section 1.06 of the Sound & Communications Agreement required the parties to arbitrate their dispute about whether Grand Electric effectively withdrew its assent to be bound by the Agreements.  (See filing 90 at 9-10, 15.)  After studying those sections and the Agreements generally, I concluded that "evidence of the parties' agreement to arbitrate the dispute in question is lacking."  Granite Rock, 130 S. Ct. at 2858.  Specifically, I noted that although section 1.6 of the Inside Agreement and section 1.06 of the Sound & Communications Agreement required "grievances or questions in dispute" to "be adjusted by the duly authorized representative of each of the parties to [the] Agreement," there was no showing that Grand Electric was a "party" to either Agreement "after it issued written notice of its withdrawal of its Letters of Assent."  (Filing 109 at 9-10.)  Nor was there a showing "that Grand Electric continue[d] to have a 'duly authorized representative'" after having withdrawn its Letters of Assent to the Chapter's representation.  (Id. at 10.)  I also noted that the dispute at issue seemed to be governed by section 1.2 of the Inside Agreement, section 1.02 of the Sound & Communications Agreement, and the terms of the Letters of Assent themselves, and Local 265 failed to explain why these provisions should be disregarded and sections 1.6 and 1.06 should be construed to require arbitration of the dispute.  (Id.) See also Granite Rock, 130 S. Ct. at 2862.  I then explained that, because I was not persuaded that the specific arbitration clauses that Local 265 sought to enforce were applicable to the dispute at hand, Local 265 was "not owed the benefit of the presumption of arbitrability."  (Filing 109 at 11.) Local 265 has not shown that this analysis is incorrect, and I am not convinced that my order denying Local 265's motion for summary judgment ought to be modified.

**IT IS THEREFORE ORDERED** that Local 265's Motion for Reconsideration, filing 110, is denied.

Dated August 9, 2010.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge