IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GRAND ELECTRIC, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CV3160 |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | MEMORANDUM AND ORDER ON |
| ELECTRICAL WORKERS LOCAL 265, | ) | CROSS MOTIONS FOR SUMMARY |
| NATIONAL ELECTRICAL BENEFIT | ) | JUDGMENT |
| FUND, DAKOTAS & WESTERN | ) | |
| MINNESOTA ELECTRICAL HEALTH & | ) | |
| WELFARE FUND, INTERNATIONAL | ) | |
| BROTHERHOOD OF ELECTRICAL | ) | |
| WORKERS 265 VACATION FUND, | ) | |
| LINCOLN ELECTRICAL JOINT | ) | |
| APPRENTICESHIP & TRAINING TRUST | ) | |
| FUND, TRUSTEES OF THE NATIONAL | ) | |
| ELECTRICAL BENEFIT FUND, | ) | |
| TRUSTEES OF DAKOTAS & WESTERN | ) | |
| MINNESOTA ELECTRICAL HEALTH & | ) | |
| WELFARE FUND, TRUSTEES OF | ) | |
| DAKOTAS AREAWIDE IBEW-NECA | ) | |
| SAVINGS AND RETIREMENT PLAN, | ) | |
| TRUSTEES OF THE INTERNATIONAL | ) | |
| BROTHERHOOD OF ELECTRICAL | ) | |
| WORKERS 265 VACATION FUND, | ) | |
| TRUSTEES OF THE LINCOLN | ) | |
| ELECTRICAL JOINT APPRENTICESHIP | ) | |
| & TRAINING TRUST FUND, and | ) | |
| DAKOTAS AREAWIDE IBEW-NECA | ) | |
| SAVINGS AND RETIREMENT PLAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On May 4, 2011, Plaintiff Grand Electric, LLC (Grand Electric) filed a motion for summary

judgment "against all Defendants," (ECF No. 155), and Defendants Dakotas and Western Minnesota

Health and Welfare Fund, Dakotas Areawide IBEW-NECA Savings & Retirement Plan, Trustees

1

of the Dakotas and Western Minnesota Health and Welfare Fund, Trustees of the Dakotas Areawide IBEW-NECA Savings & Retirement Plan, IBEW 265 Vacation Fund, Trustees of the IBEW Local 265 Vacation Fund, Lincoln Electrical Joint Apprenticeship & Training Fund, Trustees of the Lincoln Electrical Joint Apprenticeship & Training Fund, and the National Electrical Benefit Fund filed a motion for summary judgment against the plaintiff, (ECF No. 158). My analysis of these motions follows.

# I.    BACKGROUND[1]

Since its inception in December 2004, Grand Electric has been owned by Tammy and Andrew Ingwerson. (Pl.'s Statements of Material Facts (Pl.'s Facts) ¶ 32, ECF No. 156.) Tammy Ingwerson owns 50.1% of the company, while Andrew Ingwerson owns the remainder. (Id. ¶¶ 33-36.)

The Lincoln Division, Nebraska Chapter of the National Electrical Contractors Association (NECA) and the International Brotherhood of Electrical Workers Local Union No. 265 (Local 265) have been parties to an Inside Wireman Collective Bargaining Agreement (the Inside Agreement). (Pl.'s Facts ¶ 1; Defs.' Statement of Material Facts (Defs.' Facts) ¶ 1, ECF No. 161; Pl.'s Index of 4/9/10, Ex. 3, ECF No. 72-3.) On January 10, 2005, Grand Electric signed a Letter of Assent to be bound by the Inside Agreement. (Pl.'s Facts ¶ 2; Defs.' Facts ¶ 2. See also Inside Letter of Assent, Ex. 5, ECF No. 2-6.) According to its terms, the Inside Agreement was to continue in effect until August 31, 2010. (See Pl.'s Facts ¶ 3; Defs.' Response to Grand Electric's Statement of Material Facts ¶ 3, ECF No. 166.)

The Inside Agreement states that employers who have "been recognized by an assent" to the Agreement "agree[] to comply with and to be bound to the provisions of the Agreements and Declarations of Trust, and all amendments thereto, of the Dakotas Areawide IBEW-NECA Savings and Retirement Plan, and the Dakotas and Western Minnesota Electrical Industry Health and Welfare

---

[1] The facts summarized below are taken from the statements of material facts (and the responses to those statements of material facts) set forth in the parties' briefs. (See Pl.'s Br. at 1-10, ECF No. 156; Defs.' Br. at 3-12, ECF No. 161; Pl.'s Response Br. at 2-11, ECF No. 164; Defs.' Response Br. at 2-8, ECF No. 166.)

Fund." (Pl.'s Index of 4/9/10, Ex. 3 at 1, 32, ECF No. 72-3.) It also states, "The Employer agrees to contribute every month, such sums for Health and Welfare and the Savings & Retirement Plan as may be established, an amount for each hour worked by all employees covered by this Agreement." (Id. at 33.) It continues, "Each payment shall be accompanied by a report in a form as specified by the Trustees. An Employer shall be considered 'delinquent' for a particular work month if its required report and the proper payment for that month are not postmarked on or before the 15th day of the following month (the 'due date'), irrespective of whether such delinquency is willful or otherwise." (Id.) "[A]n Employer who is delinquent and has unpaid contributions shall be required to pay to the Funds an additional amount of 10% of the amount of the unpaid contributions as liquidated damages . . . . A delinquent Employer shall also be required to pay all cost of collection actually incurred by the Funds, including all attorney fees, service fees, filing fees, court reporter fees and all other fees, costs, and disbursements incurred by or on behalf of the Trust Funds in collecting the amount due." (Id. at 34.)

Section 6.9 of the Inside Agreement states,

> It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF") . . . now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF, the individual employer will forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment . . . shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

> The individual employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

(Id. at 35.) The Restated Employees Benefit Agreement and Trust states, "In the event a Covered Employer has failed or fails to make requested contributions, the Trustees are authorized and empowered . . . to assess and receive from such Covered Employer as liquidated damages an amount up to twenty percent (20%) of the amount found to be delinquent . . ." and "to impose on and received from such Covered Employer all costs, audit expenses, actuarial expenses, and attorneys

3

fees incurred by the Trustees in enforcing the provisions hereof, whether by litigation or otherwise
. . . ."  (Cefalu Aff. Ex. G, Restated Agreement Sections 6.9.2 and 6.9.5, ECF No. 160-7.)

The Inside Agreement also provides for the creation of "a local Joint Apprenticeship and
Training Committee (JATC) consisting of . . . members who shall also serve as Trustees to the local
apprenticeship and training trust."  (Id. at 27.)   The JATC is "responsible for the training of
apprentices, journeymen, installers, technicians, and all others (unindentured, intermediate
journeymen, etc.)."  (Id.)  Section 5.15 of the Inside Agreement states that "[t]he parties to this
Agreement shall be bound by the Local Joint Apprenticeship Training Trust Fund Agreement," and
section 5.16 states that "[a]ll Employers subject to the terms of this Agreement shall contribute the
amount of funds specified by the parties signatory to the local apprenticeship and training trust
agreement," with the sum being "due the Trust Fund by the same date as their payment to the NEBF
under the terms of the Restated Employees Benefit Agreement and Trust."  (Id. at 31-32.)

In addition, Section 3.24 of the Inside Agreement states,

> Vacation Deduction: Each Employer shall withhold from the aforementioned
> designated wage scale, four percent (4%) of the gross weekly pay.  The Employer
> shall transmit this vacation withholding, in accordance with the provisions of the
> respective vacation fund agreement, to and shall be received in the Vacation Fund
> office monthly; the money shall become due and delinquent on the same date as is
> the payment to the NEBF under the terms of the Employees Benefit Agreement.

(Id. at 20.)

The parties seem to agree that between January 2005 and July 23, 2009, Grand Electric
submitted reports and/or contributions to the Dakotas Areawide IBEW-NECA Savings and
Retirement Plan, the Dakotas and Western Minnesota Electrical Industry Health and Welfare Fund,
the National Electrical Benefit Fund, the Lincoln Electrical Joint Apprenticeship & Training Fund,
and the IBEW 265 Vacation Fund.  (See Defs.' Facts ¶¶ 13-14; Pl.'s Response to Defs.' Statement
of Material Facts ¶¶ 13-14, ECF No. 164; Am. Compl. ¶¶ 15, 24, ECF No. 134.)[2]

NECA and Local 265 are also parties to a Sound and Communications Collective Bargaining
Agreement (the Sound and Communications Agreement) that took effect on December 1, 2008, and

---

[2] As will be discussed below, Grand Electric claims that it overpaid the funds between
January 2005 and July 24, 2009.  (See Am. Compl. ¶ 51, ECF No. 134.)

4

continues in effect until November 30, 2011.  (Pl.'s Facts ¶ 4; Defs.' Facts ¶ 3; Pl.'s Index of 4/9/10, Ex. 4, ECF No. 72-4.)  On April 13, 2009, Grand Electric signed a Letter of Assent to be bound by the Sound and Communications Agreement.  (Pl.'s Facts ¶ 5; Defs.' Facts ¶ 4.  See also Sound and Communications Letter of Assent, Ex. 6, ECF No. 2-7.)  Although the amended complaint alleges that the terms of the Sound and Communications Agreement required Grand Electric to make monthly contributions to the Dakotas Areawide IBEW-NECA Savings and Retirement Plan, the Dakotas and Western Minnesota Electrical Industry Health and Welfare Fund, the National Electrical Benefit Fund, the Lincoln Electrical Joint Apprenticeship & Training Fund, and the International Brotherhood of Electrical Workers 265 Vacation Fund, (see Am. Compl. ¶¶ 15, 24), neither the plaintiff's nor the defendants' statements of material facts specifically address this point.

Tammy and Andrew Ingwerson each state, "As of February 5, 2009, Grand Electric only employed one (1) or fewer persons in the Inside bargaining unit," and "Grand Electric has had one (1) or fewer persons doing 'Inside work' from February 5, 2009 until the present." (Pl.'s Index of 4/9/10, Ex. 1, Andrew Ingwerson Aff. ¶¶ 11, 16, ECF No. 72-1; Pl.'s Index of 4/9/10, Ex. 2, Tammy Ingwerson Aff. ¶¶ 12, 25, ECF No. 72-2.  See also Pl.'s Facts ¶¶ 7, 9.)  They add, "Grand Electric has never employed more than one (1) person in the Sound and Communications bargaining unit," and Grand Electric has had one (1) or fewer persons doing 'Sound & Communications work' from April 13, 2009 until the present."  (Pl.'s Index of 4/9/10, Ex. 1, Andrew Ingwerson Aff. ¶¶ 12, 17, ECF No. 72-1; Pl.'s Index of 4/9/10, Ex. 2, Tammy Ingwerson Aff. ¶¶ 13, 27, ECF No. 72-2.  See also Pl.'s Facts ¶¶ 8, 10.)[3]  More specifically, Andrew Ingwerson states that from January 5, 2009, to February 4, 2009, Grand Electric employed Andrew B. Krejci, who performed "Inside" work, and Cory Hibbler,[4] who performed "shop work"; that from February 5, 2009, to March 22, 2009, Grand

_____

[3] The plaintiff's use of the term "never" here is somewhat misleading.  As will be discussed below, the plaintiff's evidence focuses on records dating back only to January 2009.  I take it, however, that because Grand Electric did not assent to the Sound and Communications Agreement until April 2009, the plaintiff means to say that Grand Electric never employed more than one person who did work covered by the Sound and Communications Agreement since the date it became bound by the Agreement.

[4] Elsewhere in the record, Hibbler's name is spelled "Hibbeler."  (See Pl.'s Index of 4/9/10, Ex. 13, ECF No. 72-13.)

5

Electric employed Cory Hibbler, who performed "shop work"; that from March 23, 2009, to April 12, 2009, Grand Electric had no employees; that from April 13, 2009, to April 19, 2009, Grand Electric employed Dane Squires, who performed "Sound & Communications" work; that from April 20, 2009, to June 12, 2009, Grand Electric employed Robert Deklavs, who performed "Inside" work, and Dane Squires, who performed "Sound & Communications" work; that from June 13, 2009, to December 3, 2009, Grand Electric employed Dane Squires, who performed "Inside" and "Sound & Communications" work; that from December 4, 2009, to March 1, 2010, Grand Electric had no employees; and that from March 2, 2010, to April 9, 2010, Grand Electric employed Dane Squires, who performed "Inside" work. (Pl.'s Facts ¶ 22 (citing Pl.'s Index of 4/9/10, Ex. 1, Andrew Ingwerson Aff. ¶ 29).)

In short, it appears that between January 5, 2009, and April 9, 2010, Grand Electric employed between zero and two people; moreover, during periods when two people were employed, the two never performed "Inside" work at the same time and never performed "Sound & Communications" work at the same time. (See id.) Tammy Ingwerson adds that this general state of affairs has continued through May 4, 2011. (Pl.'s Index of 5/4/11, Ex. 20, Tammy Ingwerson Aff. ¶¶ 3-5.) More specifically, she states that Grand Electric has employed "one or fewer employees" in both the Inside bargaining unit and the Sound and Communications bargaining unit "between the beginning of this lawsuit" and May 4, 2011, and she adds that "Grand Electric has . . . no plans or intentions to hire additional persons in either the Inside or Sound and Communications bargaining units." (Id.)

The defendants claim to dispute Grand Electric's evidence that since February 2009, it employed one or fewer employees in each of the bargaining units at any given time. (See Defs.' Response to Grand Electric's Statement of Material Facts ¶¶ 7-24, 28.) In essence, the defendants' dispute is based on two points: 1) "The Funds' audit reveals that in 2009 Grand Electric employed Robert Deklavs, Andrew Krejci, and Dane Squires," and 2) "Plaintiff has provided only testimony from the owners of Grand Electric, and has admitted that it did not maintain contemporaneous time records completed by employees." (E.g., id. ¶ 7.) In support of the latter point, the defendants refer me to an exhibit that consists of approximately 20 pages excerpted from the deposition of Andrew Ingwerson–but, contrary to Federal Rule of Civil Procedure 56(c)(1)(A) and Nebraska Civil Rule 56.1(a)(2), the defendants have failed to refer me to any specific pages of the exhibit. The former

6

point simply does not call the plaintiff's evidence into doubt. Indeed, Grand Electric explained that it did employ Deklavs, Krejci, and Squires (and Hibbler) during 2009, but that it never had more than one of these employees perform Inside work or Sound and Communications work at a given time.

The defendants also claim to dispute the Ingwersons' statements that they have no intention of hiring additional employees into either of the bargaining units. (See Defs.' Response to Grand Electric's Statement of Material Facts ¶¶ 25, 29.) More specifically, the defendants suggest that the Ingwersons' statements "may be self-serving." (Id.) The Ingwersons' statements are clearly relevant, however, and I perceive nothing impermissible about them.

I find that there is no genuine dispute that between January 2009 and May 2011, Grand Electric never employed more than one person in either the Inside unit or the Sound and Communications unit at any given time, and that Grand Electric has had no intention of hiring additional employees into either of these units.

In a letter dated July 23, 2009, Grand Electric informed Clinton Burge, Business Manager of Local 265, that it was withdrawing and canceling its January 10, 2005, Letter of Assent to the Inside Agreement. (E.g., Pl.'s Index of 4/9/10, Ex. 7, Letter at 1, ECF No. 72-7.) Grand Electric informed Burge that the cancellation was "based on the fact that Grand Electric has, for some period of time, employed one (1) or fewer employee(s) in the bargaining unit and does not have any intention of employing any additional employees in the Local 265 bargaining unit in the future." (Id.) In a second letter bearing the same date, Grand Electric informed Burge that it was withdrawing and canceling its April 13, 2009, Letter of Assent to the Sound and Communications Agreement. (E.g., Pl.'s Index of 4/9/10, Ex. 8, Letter at 1, ECF No. 72-8.) Once again, Grand Electric indicated that its cancellation was based upon its "having reached a one (1) man bargaining unit status." (Id.)

Shortly thereafter, on July 27, 2009, Grand Electric filed a complaint in this court against the Dakotas Areawide IBEW-NECA Savings and Retirement Plan, the Dakotas and Western Minnesota Electrical Industry Health and Welfare Fund, the National Electrical Benefit Fund, the Lincoln Electrical Joint Apprenticeship & Training Fund, the International Brotherhood of Electrical Workers 265 Vacation Fund, the Dakotas Areawide IBEW-NECA Vacation & Holiday Plan (collectively, "the Funds"), the trustees of each of the Funds, and Local 265. (See generally Compl., ECF No. 1.) In this complaint, "Grand Electric [sought] a declaratory judgment determining that

7

Grand Electric properly and effectively repudiated and terminated [the] two collective bargaining agreements which terminated any obligation that Grand Electric had to contribute fringe benefits to Defendant Funds or Fund Trustees." (Id. ¶ 19.)

Local 265 filed an answer to the complaint and a counterclaim on October 15, 2009.  (ECF No. 40.)  Grand Electric dismissed the Dakotas Areawide IBEW-NECA Vacation and Holiday Plan and the Trustees of the Dakotas Areawide IBEW-NECA Vacation and Holiday Plan from the action "without prejudice" on October 27, 2009.  (ECF No. 44.)  The remaining ten defendants (in three groups) filed motions to dismiss the complaint on October 15, 2009, (see ECF Nos. 36, 39), and October 30, 2009, (see ECF No. 46).

The motions to dismiss were ultimately denied, (see ECF Nos. 55, 59), and on March 15, 2010, the ten defendants (now in two groups) filed answers and counterclaims, (see ECF Nos. 60, 61).  The answer filed by Defendants Dakotas Areawide IBEW-NECA Savings and Retirement Plan, Dakotas and Western Minnesota Electrical Industry Health and Welfare Fund, Trustees of the Dakotas Areawide IBEW-NECA Savings and Retirement Plan, and Trustees of the Dakotas and Western Minnesota Electrical Industry Health and Welfare Fund includes a counterlcaim alleging, inter alia, that Grand Electric did not submit reports and contributions required under the terms of the Inside Agreement.  (Counterclaim ¶¶ 6-12, Prayer for Relief ¶¶ 1-2, ECF No. 60.)  The answer filed on March 15, 2010, by Defendants National Electrical Benefit Fund, Lincoln Electrical Joint Apprenticeship & Training Fund, International Brotherhood of Electrical Workers 265 Vacation Fund, and the respective trustees of those funds includes a counterclaim alleging, inter alia, that Grand Electric did not submit reports and contributions required under the terms of both the Inside Agreement and the Sound and Communications Agreement.  (Counterclaim ¶¶ 10-17, ECF No. 61.)

On April 19, 2010, Defendants Dakotas Areawide IBEW-NECA Savings and Retirement Plan, Dakotas and Western Minnesota Electrical Industry Health and Welfare Fund, and the trustees of those entities filed an amended counterclaim.  (ECF No. 77.)  The amended counterclaim adds allegations that these defendants have a right to audit certain records in the possession of Grand Electric.  (Counterclaim ¶¶ 18-25, ECF No. 77.)

Meanwhile, Grand Electric and Local 265 each filed motions for summary judgment.  (ECF Nos. 70, 89.)  On June 30, 2010, I denied the motion for summary judgment filed by Local 265.  (See

ECF Nos. 109, 118.)  I also found that Grand Electric was "entitled to summary judgment on its claim that its obligation to continue making benefit contributions pursuant to the [Inside and Sound and Communications] Agreements ends on the Agreements' termination dates," but I declined to enter a final judgment. (Mem. & Order at 15-16, ECF No. 109.)  I did not resolve the other aspects of Grand Electric's motion for summary judgment, however, because the defendants established a need for leave to conduct adequate discovery in connection with the motion.  (See id. at 11-14, 16.)

On November 24, 2010, Grand Electric filed an amended complaint. (ECF No. 134.)  Like the original complaint, the amended complaint includes a claim for "a declaratory judgment determining that Grand Electric properly and effectively repudiated and terminated two collective bargaining agreements which terminated any obligation that Grand Electric had to contribute fringe benefits to Defendant Funds or Fund Trustees." (Am. Compl. ¶ 19, ECF No. 134.)[5]  In addition, the amended complaint includes a "Claim for Restitution."  (Id. at 8.)  In support of this claim, Grand Electric alleges that it "overpaid" contributions to the defendants between January 2005 and July 24, 2009, "due to a mistake of fact and/or law." (Id. ¶¶ 48, 51.)  It adds that "Grand Electric mistakenly relied upon statements made by Defendants and their representatives in determining how to pay contributions."  (Id. ¶ 49.)[6]

_____

[5] The caption of the Amended Complaint does not list all of the defendants.  (See ECF No. 134 at 1.)  I note, however, that the body of the complaint lists the Dakotas Areawide IBEW-NECA Vacation and Holiday Plan and the Trustees of the Dakotas Areawide IBEW-NECA Vacation and Holiday Plan as defendants.  (See id. ¶¶ 6, 12, 15-16.)  Grand Electric had dismissed these defendants from the original complaint on October 27, 2009.  (ECF No. 44.)

[6] Also on November 24, 2010, Grand Electric filed amended answers to the counterclaims filed by Dakotas Areawide IBEW-NECA Savings and Retirement Plan, Dakotas and Western Minnesota Electrical Industry Health and Welfare Fund, Trustees of the Dakotas Areawide IBEW-NECA Savings and Retirement Plan, and Trustees of the Dakotas and Western Minnesota Electrical Industry Health and Welfare Fund, (ECF No. 60), and by National Electrical Benefit Fund, Lincoln Electrical Joint Apprenticeship & Training Fund, International Brotherhood of Electrical Workers 265 Vacation Fund, and the respective trustees of those funds on March 15, 2010, (ECF No. 61).  (See ECF Nos. 135-136.)  Grand Electric's amended answers to these counterclaims include affirmative defenses stating that "Grand Electric is entitled to an offset in the amount of any and all overpaid contributions made by Grand Electric to Counterclaim Plaintiffs as a result of Grand Electric's mistake of law and/or fact."  (Am. Answer to Counterclaim ¶ 26, ECF No. 135; Am. Answer to Counterclaim ¶ 36, ECF No. 136.)

In a letter dated December 6, 2010, Roger O. Freiheit reported that he "performed a paper audit of the photocopied payroll and tax records . . . from Grand Electric . . . for the period beginning January 1, 2005 through August 31, 2010." (Cefalu Aff. Ex. E, Freiheit Letter at 2, ECF No. 160-5.) Freiheit wrote, "In summary, my audit through August 31, 2010, indicates that a total of 879.00 labor hours performed by covered employees of Grand Electrtic, LLC were not reported to the [Consolidated Receiving Fund]. The gross earnings were under reported in the amount of $20,713.73." (Id.) Based on this audit, Diane E. Laffen, who is "the receiving agent for the Dakotas and Western Minnesota Electrical Industry Health and Welfare Fund and the Areawide IBEW-NECA Savings and Retirement Plan," calculated that Grand Electric owes these two funds, collectively, $7,299.30 in fringe benefit contributions for 2009 and 2010. (Laffen Aff. ¶¶ 1, 7.) She also calculated that Grand Electric owes a total of $1,630.76 in fringe benefit contributions for 2009 and 2010 to the National Electrical Benefit Fund, the Lincoln Electrical Joint Apprenticeship & Training Fund, and the International Brotherhood of Electrical Workers 265 Vacation Fund. (Id. ¶¶ 2, 8.)

The documents attached to Freiheit's letter appear to confirm Grand Electric's claim that it employed Robert M. Decklavs, Andrew B. Krejci, and Dane Squires in 2009, though the documents include no mention of Cory Hibbler. (See Cefalu Aff. Ex. E, Freiheit Letter at 15, ECF No. 160-5.) The documents also indicate that Grand Electric employed only Dane Squires in 2010. (Id. at 5.) In addition, however, the documents show that Grand Electric employed six persons in 2005, seven persons in 2006, twelve persons in 2007, and twelve persons in 2008; wages for each of these employees were reported to the Consolidated Receiving Fund. (Id. at 11-14.)

In a letter dated December 20, 2010, the plaintiff's attorney provided the defendants' attorneys with "calculations related to Grand Electric's counterclaim [sic]."[7] (Cefalu Aff. Ex. F, Letter at 1, ECF No. 160-6.) According to this letter, Grand Electric claims to have made $25,016.81 in overpayments to the defendants from 2005 to 2009. (Id.) Tammy and Andrew

---

[7] There appears to be no dispute that the calculations set forth in this letter relate in fact to Grand Electric's restitution claim and its affirmative defense to the defendants' counterclaim. (See Defs.' Facts ¶ 40; Pl.'s Response to Defs.' Statement of Material Facts ¶ 40.)

Ingwerson's testimony indicates that these payments were made under the terms of the Inside Agreement, when in fact the work associated with the overpayments would have been covered by the Sound and Communications Agreement (if Grand Electric had assented to the Agreement prior to 2009), or perhaps a "residential agreement" to which Grand Electric admittedly never assented. (Cefalu Aff. Ex. A, Tammy Ingwerson Dep. at 45-50, ECF No. 160-1; Cefalu Aff. Ex. B., Andrew Ingwerson Dep. at 40-45, ECF No. 160-2.)  There is no evidence, however, that the work associated with the alleged overpayments was not covered by the Inside Agreement.  (See id.)  On the contrary, Grand Electric has referred me to evidence indicating that the Inside Agreement covers "all electrical work."  (Pl.'s Response Br. at 19, ECF No. 164 (citing Pl.'s Supp. Evid. Index, Ex. 21A, Burge Dep. at 22, ECF No. 165-2).)

In a memorandum and order dated March 30, 2011, United States Magistrate Judge Cheryl R. Zwart wrote, "The plaintiff['s] pending motion for summary judgment [(ECF No. 70)] is withdrawn without prejudice to refiling," and, "All parties intend to file summary judgment motions."  (Mem. & Order, ECF No. 153.)  On May 4, 2011, Grand Electric filed a motion for summary judgment "against all Defendants."  (Mot. at 1, ECF No. 155.)  Although Grand Electric asks that I "grant its Motion and enter judgment against Defendants and in favor of Grand Electric on all claims and counterclaims," (Pl.'s Br. at 27, ECF No. 156), Grand Electric's motion and brief do not address its restitution claim, (see generally ECF Nos. 155-156).

Also on May 4, 2011, Dakotas and Western Minnesota Health and Welfare Fund, Dakotas Areawide IBEW-NECA Savings & Retirement Plan, Trustees of the Dakotas and Western Minnesota Health and Welfare Fund, Trustees of the Dakotas Areawide IBEW-NECA Savings & Retirement Plan, IBEW 265 Vacation Fund, Trustees of the IBEW Local 265 Vacation Fund, Lincoln Electrical Joint Apprenticeship & Training Fund, Trustees of the Lincoln Electrical Joint Apprenticeship & Training Fund, and the National Electrical Benefit Fund filed jointly a motion for summary judgment "upon [their] claims for delinquent contributions due under § 515 of ERISA, all associated damages available under § 502 of ERISA," and "Grand Electric's claim for restitution or offset."  (Mot. at 1-2, ECF No. 158.)  I note in passing that Defendants Local 265 and Trustees of the National Electrical Benefit Fund did not respond to the plaintiff's motion for summary judgment and did not file motions for summary judgment themselves.  I also note that it is unclear whether

Dakotas Areawide IBEW-NECA Vacation and Holiday Plan and Trustees of the Dakotas Areawide IBEW-NECA Vacation and Holiday Plan are meant to be named defendants in this action.  (See Notice to Dismiss, ECF No. 44; Am. Compl. ¶¶ 6, 12, ECF No. 134.)

## II.   STANDARD OF REVIEW

A motion for summary judgment shall be granted by the court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  See also Haigh v. Gelita USA, Inc., 632 F.3d 464, 468 (8th Cir. 2011).  In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Haigh, 632 F.3d at 468.

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits."  Wermager v. Cormorant Township Board, 716 F.2d 1211, 1214 (8th Cir. 1983) (citations omitted).  If the materials submitted by the parties support conflicting inferences with respect to any material fact, summary judgment is not appropriate.  See id.

## III.   ANALYSIS

### A.   Grand Electric's Motion for Summary Judgment

As noted above, Grand Electric's seeks, among other things, a declaration that it properly terminated the Inside Agreement and Sound and Communications Agreements on July 24, 2009, and that this termination ended its obligation to make fringe benefit contributions to the defendants. (E.g., Am. Compl. ¶¶ 19, 32, ECF No. 134.)  Grand Electric submits that it is entitled to summary judgment on this claim because "it had reached one-man-unit status and had no plans to change its operation and employ any additional employees in either bargaining unit in the future."  (Pl.'s Br. at 13, ECF No. 156.)

12

Grand Electric relies upon the "one-man unit" exception to the "general rule" that collective bargaining agreements "are generally governed by Section 8(f) of the National Labor Relations Act, 29 U.S.C. § [158(f)] (the 'Act') and would usually be enforceable through Section 8(a)(5) and 8(b)(3) of the Act." (Pl.'s Br. at 13, ECF No. 156 (citing Stack Elec., Inc., 290 N.L.R.B. 575, 577 (1988)).)[8]  In Stack Electric, Inc., the Board explained,

> It is settled that if an employer employs one or fewer unit employees on a permanent bases that the employer, without violating Section 8(a)(5) of the Act, may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording a union an opportunity to bargain.  The basis for permitting an employer to engage in this conduct was explained by the Board in Foreign Car Center, 129 N.L.R.B. 319, 320 (1960), as follows:
>
> > The Board has held that it will not certify a one-man unit because the principles of collective bargaining presuppose that there is more than one eligible person who desires to bargain.  The Act therefore does not empower the Board to certify a one-man unit.  By parity of reasoning, the Act precludes the Board from directing an employer to bargain with respect to such a unit.  While we have held that the Act does not preclude bargaining with a union on behalf of a single employee, if an employer is willing, we have never held that an employer's refusal to bargain with a representative on behalf of a one-man unit is a refusal to bargain within the meaning of Section 8(a)(5).

290 N.L.R.B. at 577 (quoting D & B Masonry, 275 N.L.R.B. 1403 (1985)) (citations omitted).

As I noted above, there is no genuine dispute that between January 2009 and May 2011, Grand Electric occasionally employed up to two people, but it did not employ more than one person

---

[8] Section 8(f) applies to agreements "covering employees in the building and construction industry." 29 U.S.C. § 158(f).  The amended complaint alleges that the Inside Agreement and the Sound and Communications are section 8(f) agreements.  (Am. Compl. ¶¶ 22-23, ECF No. 134.)  The defendants, however, deny that the Agreements are governed by section 8(f).  (See Answer ¶¶ 5, 10, ECF No. 140; Answer ¶¶ 22-23, ECF No. 141.)  Despite this tension, neither party has argued that the question of whether the Inside Agreement and Sound and Communications Agreement may properly be classified as "section 8(f) agreements" is material in this case.  Nor have the defendants argued that the one-man unit rule has been rejected by the Eighth Circuit, or is otherwise in tension with Eighth Circuit law.  I shall therefore assume, for the purposes of this motion, that the Agreements are of a type that may fall within the reach of the one-man unit rule, and I shall refer to the National Labor Relations Board decisions cited by the parties when applying the rule to the facts of this case.

13

in the Inside unit or in the Sound and Communications unit at any given time. The plaintiff submits that these facts, coupled with Grand Electric's determination in July 2009 that it had no intention of employing additional workers in either bargaining unit, are sufficient to establish that it could properly repudiate the Agreements pursuant to the one-man unit rule. (Pl.'s Br. at 17-18, 19, ECF No. 156.) The defendants argue, however, that the facts do "not justify application of the 'one-man unit' exception as it was applied in <u>Searls Refrigeration Co.</u>, 297 N.L.R.B. 133, 135 (1989) and <u>Stack Electric</u>." (Defs.' Br. at 10, ECF No. 166.) They add, "In both <u>Searls</u> and <u>Stack Electric</u>, the employer had not employed more than one employee for over two years, and also had no history of any relationship with the Union for months. In this case, Grand Electric signed a union contract weeks prior to filing this lawsuit, and employed over ten union employees during 2008, just months year [sic] prior to claiming it was a one-man unit." (<u>Id.</u> at 10-11.) The defendants also argue that the plaintiff cannot "rely upon the time period of August 2009 to the present to demonstrate it is a 'one-man' unit," because "[t]he time period after Grand Electric filed this lawsuit is immaterial and self-serving at best, as the Complaint alleges that as of July 23, 2009, it was a stable one-man unit." (Def.'s Br. at 11, ECF No. 166.) The defendants add, "An employer cannot merely claim it is a one-man unit, file a lawsuit, and then avoid hiring additional employees during the life of the lawsuit to demonstrate that it is truly a one-man unit." (<u>Id.</u>)

I turn first to the question of whether the time period subsequent to the filing of the plaintiff's original complaint–i.e., August 2009 to the present–is relevant to the determination of whether Grand Electric reached one-man unit status. Neither party has referred me to a National Labor Relations Board decision that directly addresses this question. I note, however, that <u>Searls Refrigeration Co.</u> seems to suggest that I should consider all of the available information about the number of employees in a bargaining unit.

Searls entered into an agreement with Local 469 and Local 714 on January 31, 1985. 297 N.L.R.B. at 133.[9] The term of the succeeding agreement (to which Searls was bound) was scheduled to run from July 1, 1987, to June 30, 1991. <u>Id.</u> at 134. On December 10, 1987, Searls notified Local 469 that it was terminating the agreement. <u>Id.</u> Searls did not clearly notify Local 741 that it was

---

[9] The Administrative Law Judge who decided the case occasionally refers to Local 714 (per the caption of the case) as "Local 471." I shall refer to this union as "Local 714."

terminating the agreement, however, until September 20, 1988.  Id.  On September 26, 1988, Local 741 filed its original charge, and the regional director for the National Labor Relations Board issued a complaint against Searls on October 27, 1988.  Id. at 133.  In a decision dated May 17, 1989, see id., an Administrative Law Judge (ALJ) concluded that the one-man unit rule applied, and therefore Searls' repudiation of the contract was not unlawful, id. at 135.  In reaching this conclusion, the ALJ considered the size of "the appropriate unit" across a relatively lengthy period of time.  Id. at 135.  For present purposes, it is significant that the ALJ considered the number of persons employed by Searls through January 1989, (see id. at 134, 135), and relied heavily upon the fact that the appropriate unit included no employees for a period of approximately two years ending "about a month after [Searls'] repudiation letter of September 20, 1988, (id. at 135).

In short, the ALJ in Searls Refrigeration Co. considered evidence about the size of the unit after Searls' notice of repudiation and after the issuance of the complaint.  The defendants have referred me to no authority indicating that it was inappropriate for the ALJ to consider this evidence in Searls Refrigeration Co., and I am not persuaded that it is impermissible for me to consider evidence of the size of the unit during the pendency of this litigation.

It remains to be determined whether the one-man unit exception is applicable in this case.  "[I]n applying the one-man unit rule, it is the permanent size of the unit, not the number of actual incumbents employed at any given point in time, which is controlling," and it is the plaintiff's burden "to demonstrate that the reduction in size is a permanent reduction, not merely a temporary happenstance occasioned by personnel shifts or employee turnover."  Goodman Inv. Co., 292 N.L.R.B. 340, 348 (1989) (citations omitted).

It is a close question whether the plaintiff has satisfied its burden in this case.  On the one hand, the plaintiff has not employed more than one person at a time in either bargaining unit between approximately February 2009 and May 2011, and the Ingwersons' July 2009 determination that Grand Electric would not add employees to either unit has been borne out during the past two years (as this litigation was pending).  On the other hand, the defendants note that Grand Electric employed six persons in 2005, seven persons in 2006, twelve persons in 2007, and twelve persons in 2008 before reducing its number of employees in 2009 and claiming one-man unit status.  The defendants also correctly note that Grand Electric signed a Letter of Assent to be bound by the Sound and

15

Communications Agreement on April 13, 2009, and then repudiated the Agreement approximately three months later on July 23, 2009.

According to the defendants, the facts show that the reduction in unit size is not permanent, but rather is being maintained by Grand Electric purely for the purposes of this litigation. (Defs.' Br. at 11, ECF No. 166.) The defendants' argument is not without force. However, after careful consideration, I find that there is no genuine issue of material fact, and Grand Electric has shown that as of July 24, 2009, it made a permanent reduction in the size of the bargaining units. The evidence demonstrates that this reduction is not "a temporary happenstance occasioned by personnel shifts or employee turnover," Goodman Inv. Co., 292 N.L.R.B. at 348, but is rather the result of an intentional decision by the owners of Grand Electric to employ no more than one person in each unit going forward from July 23, 2009. This decision is supported by evidence that includes not only the Ingwersons' statements of their intention to permanently reduce the number of employees at Grand Electric, but also documents indicating that Grand Electric has not employed more than one person in either unit between July 23, 2009, and May 2011. Although it is true that Grand Electric assented to the Sound and Communications Agreement shortly before repudiating it, this fact does not indicate that the size of the unit has been reduced to a single person only temporarily. On the contrary, the evidence shows that the Sound and Communications unit has consisted of only one employee from the time of Grand Electric's assent until at least May 2011.

Because Grand Electric permanently reduced the size of the units to one or fewer employees as of July 24, 2009, I find that it has appropriately invoked the one-man unit rule, and its repudiation of the Inside and Sound and Communications Agreements on that date did not violate the National Labor Relations Act.

It does not follow, however, that Grand Electric is entitled to a declaration that its obligation to make fringe benefit payments to the defendants also ended on July 24, 2009. (See Am. Compl. ¶¶ 19, 32.)   As noted above, Grand Electric ceased to make fringe benefit contributions to the defendants beginning in 2009. Seeking to recover those unpaid contributions, the defendants have filed a counterclaim pursuant to section 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1145. (See, e.g., Counterclaim ¶ 4, ECF No. 60; Counterclaim ¶ 1, ECF No. 61.) Section 515 of ERISA states,

16

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Section 515 "creates a federal right of action independent of the contract on which the duty to contribute is based." Central States, Southeast and Southwast Areas Pension Fund v. Independent Fruit & Produce Co., 919 F.2d 1343, 1347-48 (8th Cir. 1990) (quoting Bituminous Coal Operators' Ass'n v. Connors, 867 F.2d 625, 633 (D.C. Cir. 1989)). "Congress intended that this section would simplify actions to collect delinquent contributions, avoid costly litigation, and enhance the actuarial planning necessary to the administration of multiemployer pension plans." Id. at 1348 (citation omitted).

Section 515 deals with these concerns by placing a pension fund in a better position than that which it would otherwise occupy in relation to the collective bargaining agreement. Because a pension fund is not a party to the collective bargaining agreement, it would normally be a third party beneficiary of it. As a third party beneficiary, however, the pension fund would be subject to "any contract defense which the promisor could assert against the promisee if the promisee were suing on the contract." [Southweset Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 773 (9th Cir. 1986).] It is these contract defenses–for example, fraud in the inducement, oral side agreements or course of performance–that are most likely to breed litigation. As a result, the courts find that section 515 places the pension fund in a better position, analogous to that of a holder in due course or a receiver of a failed bank–"entitled to enforce the writing without regard to understandings or defenses applicable to the original parties." [Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148, 1149 (7th Cir. 1989).] "If it means nothing else, section 515 means that . . . suit [by a trustee] cannot be thwarted by defenses not apparent from the face of the Agreement." Connors, 867 F.2d at 634. The courts of appeals have been unanimous in so holding. See, e.g., Berry v. Garza, 919 F.2d 87, 89-90 (8th Cir.1990) (rejecting defense based on lack of majority status); [Benson v. Brower's Moving & Storage, 907 F.2d 310, 314-15 (2d Cir. 1990)] (rejecting defenses of abandonment of contract and lack of majority representation); Gerber, 870 F.2d at 1150-51 (rejecting defense based on oral agreement between the parties not to enforce the written terms of the collective bargaining agreement as to some employees); [Robbins v. Lynch, 836 F.2d 330, 333-34 (7th Cir. 1988)] (rejecting as defense claim that union had agreed not to collect a payment called for by the agreement); Rozay's Transfer, 791 F.2d at 775 (rejecting claim that promise to make contributions was fraudulently induced); Southern California Retail Clerks Union & Food Employers Joint Pension Trust Fund v.

17

Bjorklund, 728 F.2d 1262, 1265-66 (9th Cir.1984) (same).  In sum, the courts recognize only two defenses to a collection action: that the pension contributions are themselves illegal or that the collective bargaining agreement is void.  Benson, 907 F.2d at 314.

Through section 515, Congress has decided that a pension fund is entitled to "assume that all participants in a plan are following the stated terms; no other approach permits accurate actuarial computations and proper decisions about which claims to pay."  Robbins, 836 F.2d at 333 (emphasis added).

Id. at 1348-49 (citations ommitted).

In short, "benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations," Benson v. Brower's Moving & Storage, 907 F.2d 310, 314 (2d Cir. 1990), and therefore "an employer [who] knowingly signs an agreement that requires him to contribute to an employee benefit plan . . . may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole,"  Berry v. Garza, 919 F.3d 87, 90 (8th Cir. 1990) (quoting Benson, 907 F.2d at 314) (alterations in original).

In this case, Grand Electric repudiated the Agreements based on the one-man unit rule, and, as explained above, the plaintiff has shown that this repudiation did not constitute an unfair labor practice within the meaning of the National Labor Relations Act.  But the one-man unit rule clearly is not a defense that is "apparent from the face" of the Agreements.  Also, Grand Electric's repudiation of the Agreements did not render the Agreements void ab initio, even if the one-man unit rule rendered them voidable.  Cf. Benson, 907 F.2d at 314 (discussing the distinction between void and voidable agreements, citing Operating Eng'rs Pension Trust v. Gillam, 737 F.2d 1501, 1503-05 (9th Cir. 1984) and Southern California Retail Clerks Union and Food Employers Joint Pension Trust Fund v. Bjorklund, 728 F.2d 1262, 1265-66 (9th Cir. 1984)); Rozay's Transfer, 791 F.2d at 773-74 (same).  See also Benson, 907 F.2d at 315 (explaining that even if "no valid written agreement exists," and employer "is not released from its obligation to the Funds because 'nothing in ERISA makes the obligation to contribute [to a benefit plan] depend on the existence of a valid collective bargaining agreement'").  Nor is there any indication that the contributions at issue "are themselves illegal."   The one-man unit rule may well operate as a defense to Local 265's "ability to enforce the contract as a whole," but because Grand Electric knowingly signed the Inside and

18

Sound and Communications Agreements, the one-man unit rule does not allow Grand Electric to escape its obligation to contribute to the defendant funds in accordance with the terms of those Agreements.  Berry, 919 F.3d at 90 (quoting Benson, 907 F.2d at 314); Martin v. Garman Construction Co., 945 F.2d 1000, 1006 (7th Cir. 1991) ("Here, [the employer's] liability under section 515 . . . arose directly from the contract that [the employer] entered, even if the repudiation is not an unfair labor practice [under the one-man unit rule].").  As the Seventh Circuit explained, "many of the defenses available under the NLRA or under traditional contract law do not fly under ERISA."  Martin, 945 F.2d at 1005.  "The one-man rule may remain valid for purposes of unfair labor practice proceedings while counting for naught when the contract is cognizable under ERISA." Id.  See also International Brotherhood of Electrical Workers Local Union No. 22/NECA Health and Welfare Trust Fund v. Genesis Electrical Services, Inc., No. 8:08CV43, 2008 WL 4533974, at *5-8 (D. Neb. Oct. 3, 2008).

In light of the foregoing authorities, I find that Grand Electric is not entitled to a judgment stating that its obligation to contribute to the defendant funds ended on or about July 24, 2009.

Grand Electric argues that because its obligation to make contributions to the funds "arose solely out of the [Agreements], Grand Electric's obligation ended when Grand Electric terminated the [Agreements].  Any other conclusion would violate 29 U.S.C. § 186 (Section 302 of the Labor Management Relations Act) which only allows a trust fund to collect contributions when 'the detailed basis on which such payments are to be made is specified in a written agreement with the employer . . . ." (Pl.'s Br. at 22, ECF No. 156 (citations omitted) (emphasis in original).)  As explained above, however, the defendants' claim is based on ERISA, not the Labor Management Relations Act, and Grand Electric's repudiation of the Agreements did not extinguish the defendants' claims for unpaid contributions under ERISA.  See Martin, 945 F.2d at 1005-06.  Moreover, the defendants are seeking contributions specified in the written Agreements between the NECA and Local 265, and the plaintiff assented to be bound by the terms of these Agreements.  The plaintiff's suggestion that the defendants are seeking contributions that are not defined in a written agreement is without merit.

Grand Electric also argues that I should adopt the reasoning of the Ninth Circuit in Laborers Health and Welfare Trust Fund for Northern California v. Westlake Development, 53 F.3d 979 (9th

19

Cir. 1995).  In <u>Westlake Development</u>, the court held that the employer lawfully repudiated a pre-hire agreement[10] because the employer only employed one employee "during the relevant time period" and "gave actual notice of repudiation in its letter of September 20, 1990," to the Union. <u>Id.</u> at 983 (footnote omitted).  Moreover, the court found that the employer's "unilateral repudiation of the CBA" was not only lawful, but rendered the CBA "void, not merely voidable."  <u>Id.</u> at 984. The court then explained, "The obligation to contribute to the Trust Funds depends upon the existence of employment covered by the CBA.  Once the CBA was lawfully repudiated, there was no longer any covered employment and thus there was no duty on Westlake's part to contribute to the Trust Funds."  <u>Id.</u>

  <u>Westlake Development</u> does support the plaintiff's position that its repudiation of the Inside and Sound and Communications Agreements terminated its obligation to contribute to the defendant funds.  I find, however, that the Ninth Circuit's holding in <u>Westlake Development</u> conflicts directly with the principles emphasized by the Eighth Circuit in <u>Berry v. Garza</u>, 919 F.2d 87, 89-90 (8th Cir. 1990), and <u>Central States, Southeast and Southwast Areas Pension Fund v. Independent Fruit & Produce Co.</u>, 919 F.2d 1343, 1347-49 (8th Cir. 1990).  Specifically, the Eighth Circuit has observed that ERISA section 515 is intended to simplify collection actions, avoid litigation, and enable funds to make actuarial plans in reliance on the stated terms of the agreements; that section 515 places the funds in a better position than a third-party beneficiary ordinarily would be; and that "an employer [who] knowingly signs an agreement that requires him to contribute to an employee benefit plan . . . may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole."  <u>Berry</u>, 919 F.3d at 90; <u>see also</u> <u>Independent Fruit & Produce Co.</u>, 919 F.2d at 1347-49.  The one-man unit rule is such a defense: it defeats the union's ability to enforce the contract as a whole, but it does not alter the undisputed fact that Grand Electric knowingly and voluntarily assented to collective bargaining agreements with Local 265.  In light of the foregoing, the Eighth Circuit would likely reject the Ninth Circuit's holding in <u>Westlake Development</u> and find that because Grand Electric failed to make contributions to the defendant funds as required by the terms of the Agreements, it is not entitled to summary judgment.

---

  [10] <u>See</u> 29 U.S.C. § 158(f).

Next, Grand Electric argues that I should disregard <u>Berry</u> because it is distinguishable from the instant case. First, Grand Electric submits that <u>Berry</u> is inapplicable because it <u>only</u> involved an action pursuant to §§ 502 and 515 of ERISA to recover delinquent contributions, whereas this case "<u>also</u> involve[s] a declaratory judgment action against the union and funds." (Pl.'s Br. at 24, ECF No. 156 (emphasis added).) As I have explained above, the plaintiff is not entitled to the declaration it seeks because the defendants have a right to collect contributions throughout the terms of the Agreements. I fail to see why the existence of the plaintiff's request for declaratory relief renders <u>Berry</u> or <u>Independent Fruit & Produce Co.</u> inapplicable. Indeed, Grand Electric's request for a declaration that its repudiation of the Agreements terminated its obligation to contribute to the funds is, in essence, a request for a ruling that the defendants cannot recover contributions under ERISA section 515. (<u>See</u> Mem & Order on Defs.' Mots. to Dismiss at 6-10, ECF No. 55; Second Mem. & Order on Defs.' Mots. to Dismiss at 3-5, ECF No. 59.)

Grand Electric also argues that <u>Berry</u> is factually distinguishable from the instant case because "<u>Berry</u> involved a lack of majority representation defense and not a one-man unit defense"; "the employer in <u>Berry</u> voluntarily executed an addendum to the CBA in which it 'specifically agreed to abide by the terms of the expired contract until a new contract was completed'"; and "the record in <u>Berry</u> contained no evidence to suggest that the employer ever attempted to exercise its contractual right to terminate the agreement." (Pl.'s Br. at 25, ECF No. 156.) It is true that neither <u>Berry</u> nor <u>Independent Fruit & Produce Co.</u> involved the one-man unit defense. As I explained above, however, I find that the Eighth Circuit's analysis in those cases strongly indicates that Grand Electric cannot rely upon the one-man unit defense to avoid the defendants' claims for delinquent contributions under ERISA section 515. The plaintiff's remaining points are without merit. The fact that the instant case concerns contributions owed during the effective terms of the Agreements (as opposed to during the term of an extension) does not meaningfully distinguish this case from <u>Berry</u>. Also, Grand Electric has not argued that it had a contractual right to terminate either the Inside Agreement or Sound and Communications Agreement on July 24, 2009; instead, it relies on the one-man unit defense.

Finally, Grand Electric argues,

21

> A determination that fringe benefit contributions continue after July 23, 2009 is unfair, unjust, and not based on logic or reason. The employee that Grand Electric has sporadically employed after July 23, 2009 derives no benefits from any fringe benefit contributions that would be paid in by Grand Electric after termination. Grand Electric would also receive no benefit from any fringe benefit contributions paid after termination. In fact, if this Court determines that Grand Electric is required to make fringe benefit contributions to the funds after July 23, 2009, the result will be a double payment of benefits by Grand Electric – once to its employee and once to the funds.

(Pl.'s Br. at 27, ECF No. 156.)

There is no evidence in the record to support Grand Electric's claim regarding double contributions. Nor is there any evidence about Grand Electric's employees' eligibility for benefits from the defendant funds. On the question of fairness, the Second Circuit noted that "the result in this and similar cases may seem quite harsh," but that "an employer's liability in this situation is not limitless because an employer is liable under section 515 only for the effective period of the collective bargaining agreement." Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 316 (2d Cir. 1990).

Grand Electric's obligation to contribute to the defendant funds continues throughout the time period specified in the Agreements to which Grand Electric assented. The plaintiff's motion for summary judgment must be denied.

### B.   The Defendants' Motion for Summary Judgment

The defendants move for summary judgment 1) on their claim against Grand Electric for unpaid benefit contributions, and 2) on Grand Electric's claim for restitution or offset. (See Defs.' Br. at 13, 22.) I shall consider each of these aspects of the defendants' motion separately.

1.   The Defendants' Claim for Unpaid Contributions

As noted previously, the defendants seek to collect unpaid fringe benefit contributions pursuant to sections 502 and 515 of ERISA, and they have moved for summary judgment on this claim.[11] For the reasons explained in Part III.A. of this memorandum, I find that the defendants are

---

[11] I note in passing that the defendants' claim falls clearly within this court's jurisdiction. See, e.g., 29 U.S.C. §§ 1132(e)(1), 1145; Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 547 (1988) ("The liability created by § 515 may be

entitled to collect unpaid fringe benefit contributions owed under the terms of the Inside and Sound and Communications Agreements.

ERISA section 502(g)(2) states that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of . . . interest on the unpaid contributions, or . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). The defendants submit they are entitled to unpaid contributions, interest on the unpaid contributions, 10% in liquidated damages, and attorney's fees and costs in accordance with this section.

With respect to unpaid contributions, the defendants state that they are only seeking contributions owed under the Inside Agreement through August 31, 2010,[12] and it appears that they are not seeking to recover any unpaid contributions owed under the Sound and Communications Agreement. (See Defs. Br. at 21-22, ECF No. 161.) Specifically, the defendants claim that the Dakotas and Western Minnesota Electrical Industry Health and Welfare Fund, the Dakotas Areawide IBEW-NECA Savings & Retirement Plan, and their respective trustees (the "Dakotas Funds") are owed collectively a total of $7,299.30 in contributions under the terms of the Inside Agreement, and the IBEW 265 Vacation Fund, Lincoln Electrical Joint Apprenticeship & Training Fund, the trustees of those funds, and the National Electrical Benefit Fund (the "Local 265 Funds") are owed collectively a total of $1,630.76 in contributions. (Defs.' Facts ¶ 28, 31.) The plaintiff complains that the defendants' claims for these damages are not supported by the evidence, (Pl.'s Response to Defs.' Statement of Material Facts ¶¶ 28, 31), and I agree. None of the materials relied upon by the

---

enforced by the trustees of a plan by bringing an action in federal district court pursuant to § 502.").

[12] The parties agree that Grand Electric was bound to the terms of that Agreement only though August 31, 2010.

defendants indicate that the relevant calculations were limited to amounts owed under the terms of the Inside Agreement. I find, therefore, that there is a genuine issue as to the amount of the contributions that the defendants may recover.

To be clear, I agree with the defendants that they are entitled to recover–in addition to the unpaid contributions– interest on the unpaid contributions plus 10% of the amount of unpaid contributions (as liquidated damages). The specific amounts of these awards remain to be determined, however, because the amount of the unpaid contributions remains unsettled.

The defendants state that their attorney's fees and costs are "to be verified at a later date." (Defs.'s Br. at 22, ECF No. 161.) Requests for costs and attorney's fees should be made in accordance with all applicable law, and the defendants should review this court's local rules and other documents governing these matters.

## 2.    The Plaintiff's Restitution Claim

In its amended complaint, Grand Electric alleges that it is entitled to restitution from the defendant funds because it "erroneously submitted fringe benefit contributions under both the inside collective bargaining agreement and the sound and communications bargaining agreement." (Am. Compl. ¶ 46, ECF No. 134.) It adds, "Grand Electric mistakenly relied upon statements made by Defendants and their representatives in determining how to pay contributions." (Id. ¶ 49.) It also alleges that the defendants are "liable to Grand Electric for all contributions found to be paid by Grand Electric to Defendant Funds and Defendant Trustees without a written agreement among the parties." (Id. ¶ 50.)

The parties agree that "an employer has a federal common law action for restitution of mistakenly made payments to an ERISA plan." Young America, Inc. v. Union Central Life Insurance Co., 101 F.3d 546, 548 (8th Cir. 1996) (citations omitted). (See also Defs.' Br. at 22-23, ECF No. 161; Pl.'s Response Br. at 18, ECF No. 164.) The defendants argue, however, that there is no genuine issue of material fact, and that the plaintiff's restitution claim fails as a matter of law. (Defs.' Br. at 25, ECF No. 161.) I agree.

As the defendants correctly note, there is no dispute that Grand Electric assented to be bound by the terms of the Inside and Sound and Communications Agreements; moreover, there is no evidence that Grand Electric made payments beyond those called for in those Agreements. The

24

plaintiff's claim that it made contributions to the defendants "without a written agreement among the parties" has no basis in fact. Nor is there evidence showing that Grand Electric erroneously submitted fringe benefit contributions under the terms of the Agreements or "mistakenly relied upon statements made by [the defendants] and their representatives [when] determining how to pay contributions."

The plaintiff argues that Clinton Burge, "who is not only the Business Manager of Local 265 but also a trustee for two of the Defendant funds," (Pl.'s Response Br. at 19, ECF No. 164 (citing Burge Dep. at 9:14-17, 14:3-9)), did not discuss with Andrew Ingwerson the type of work covered by the Inside Agreement and did not present him with "other collective bargaining agreements that he could assent to," (Burge Dep. at 21:9-22).[13]  Grand Electric adds that although Burge knew that Grand Electric did low voltage work "[p]robably from the very beginning," he failed to inform Grand Electric that a low voltage collective bargaining agreement existed.  (Id. (citing Burge Dep. at 21:9-22, 25:7-24).)  Grand Electric also refers me to Burge's testimony that the Inside Agreement "has the highest wage and the highest contributions, the low voltage agreement would be a 'little bit lower' and then the residential would be 'lower than the low voltage.'"  (Id. (quoting Burge Dep. at 23:8-15).)  Based on this testimony, Grand Electric suggests that "Burge had Grand Electric sign the agreement that provided the Defendant Funds (of which he is a trustee) the highest benefit."  (Id.)

I fail to understand how Burge's actions relate to Grand Electric's restitution claim, however. The plaintiff's theory seems to be that by making contributions in accordance with the terms of the Inside Agreement and Sound and Communications Agreement, Grand Electric paid more contributions than it might have made if Burge had presented a different agreement to Andrew Ingwerson in approximately 2005.  Implicit in the plaintiff's argument, it seems to me, is an assumption that Burge, while acting as either the union's business manager or as a fund's trustee, owed a duty to act in the best interests of Grand Electric during his negotiations with Andrew Ingwerson. The plaintiff has not identified the source of any such duty. Also, it has neither alleged nor argued that Burge (or anyone else) made any false statements to Grand Electric or engaged in

---

[13] Though the plaintiff's brief does not make this clear, it appears that Andrew Ingwerson approached Burge in January 2005 and "expressed interest in going into business and wanted to sign the proper paperwork to be a signatory contractor."  (Burge Dep. at 19:20-20:20.)

fraud.  In any event, it does not follow that Grand Electric is owed restitution for payments made pursuant to the Inside and Sound and Communications Agreements (to which it assented) merely because Grand Electric might have assented to different agreements if Burge had called attention to them in 2005.  As the defendants correctly note, the plaintiff seems to be attempting "to re-create a universe in which they signed a residential or low-voltage agreement rather than the Inside Agreement." (Defs.' Br. at 25, ECF No. 161.)  The evidence shows that Grand Electric signed on to the Inside and Sound and Communications Agreements, however, and there is no evidence that overpaid contributions due under the terms of those Agreements.

The defendants are entitled to summary judgment on the plaintiff's restitution claim.

**IT IS ORDERED** that:

1.    The motion for summary judgment filed by Plaintiff Grand Electric, ECF No. 155, is denied; and

2.    The motion for summary judgment filed by Defendants Dakotas and Western Minnesota Health and Welfare Fund, Dakotas Areawide IBEW-NECA Savings & Retirement Plan, Trustees of the Dakotas and Western Minnesota Health and Welfare Fund, Trustees of the Dakotas Areawide IBEW-NECA Savings & Retirement Plan, IBEW 265 Vacation Fund, Trustees of the IBEW Local 265 Vacation Fund, Lincoln Electrical Joint Apprenticeship & Training Fund, Trustees of the Lincoln Electrical Joint Apprenticeship & Training Fund, and the National Electrical Benefit Fund, ECF No. 158, is granted in part.  These defendants are entitled to summary judgment in their favor on each of the plaintiff's claims, and they are entitled to summary judgment on their counterclaim for unpaid contributions–but the specific amounts owed to them remain to be determined.

Dated July 25, 2011.

BY THE COURT


s/ Warren K. Urbom
United States Senior District Judge

26