IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GRAND ELECTRIC, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CV3160 |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | MEMORANDUM AND ORDER ON |
| ELECTRICAL WORKERS LOCAL 265, | ) | MOTIONS TO SEAL EXHIBITS AND |
| NATIONAL ELECTRICAL BENEFIT | ) | DEFENDANTS' MOTION FOR |
| FUND, DAKOTAS & WESTERN | ) | ATTORNEY'S FEES AND COSTS |
| MINNESOTA ELECTRICAL HEALTH & | ) | |
| WELFARE FUND, INTERNATIONAL | ) | |
| BROTHERHOOD OF ELECTRICAL | ) | |
| WORKERS 265 VACATION FUND, | ) | |
| LINCOLN ELECTRICAL JOINT | ) | |
| APPRENTICESHIP & TRAINING TRUST | ) | |
| FUND, TRUSTEES OF THE NATIONAL | ) | |
| ELECTRICAL BENEFIT FUND, | ) | |
| TRUSTEES OF DAKOTAS & WESTERN | ) | |
| MINNESOTA ELECTRICAL HEALTH & | ) | |
| WELFARE FUND, TRUSTEES OF | ) | |
| DAKOTAS AREAWIDE IBEW-NECA | ) | |
| SAVINGS AND RETIREMENT PLAN, | ) | |
| TRUSTEES OF THE INTERNATIONAL | ) | |
| BROTHERHOOD OF ELECTRICAL | ) | |
| WORKERS 265 VACATION FUND, | ) | |
| TRUSTEES OF THE LINCOLN | ) | |
| ELECTRICAL JOINT APPRENTICESHIP | ) | |
| & TRAINING TRUST FUND, and | ) | |
| DAKOTAS AREAWIDE IBEW-NECA | ) | |
| SAVINGS AND RETIREMENT PLAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On August 9, 2011, a judgment was entered in favor of Defendants Dakotas and Western

Minnesota Health and Welfare Fund, the Trustees of Dakotas and Western Minnesota Health and

Welfare Fund, Dakotas Areawide IBEW-NECA Savings and Retirement Plan, the Trustees of the

Dakotas Areawide IBEW-NECA Savings and Retirement Plan (collectively "the Dakotas Funds"),
IBEW 265 Vacation Fund, the Trustees of the IBEW 265 Vacation Fund, National Electrical Benefit
Fund, the Trustees of the National Electrical Benefit Fund, Lincoln Electrical Joint Apprenticeship
and Training Fund, and the Trustees of the Lincoln Electrical Joint Apprenticeship and Training
Fund (collectively, "the Electrical Funds") on their counterclaims against Plaintiff Grand Electric.
(ECF No. 174.)  Following the entry of judgment, the Dakotas Funds filed a motion for an award of
attorney's fees and costs, (ECF No. 176), and a motion to seal one of the exhibits submitted in
support of the motion for fees and costs, (ECF No. 175).  The Electrical Funds also filed a motion
for attorney's fees and costs, (ECF No. 181), and a motion to seal an exhibit, (ECF No. 180).  Grand
Electric has responded to the Funds' motions for attorney's fees and costs, (ECF No. 185), and it has
filed a motion to seal exhibits submitted in support of its response brief, (ECF No. 184).  For the
following reasons, I shall deny the parties' motions to seal exhibits, and I shall grant in part the
Funds' motions for fees and costs.

## I.   BACKGROUND

On July 27, 2009, Grand Electric filed a complaint in this court against the Dakotas Funds,
the Electrical Funds, and the International Brotherhood of Electrical Workers Local Union No. 265
(Local 265), seeking a declaration that "Grand Electric properly and effectively repudiated and
terminated two collective bargaining agreements[,] which terminated any obligation that Grand
Electric had to contribute fringe benefits" to the Funds.  (See Compl. ¶ 19, ECF No. 1.)[1]  In October
2009, Local 265 filed an answer to the complaint and a counterclaim, (ECF No. 40), and the Dakotas
Funds and Electrical Funds filed motions to dismiss the complaint, (see ECF Nos. 36, 39, 46).

The Funds' motions to dismiss were denied, (ECF No. 59), and on March 15, 2010, the
Dakotas Funds and Electrical Funds filed answers and counterclaims, (see ECF Nos. 60, 61).  The
counterclaim filed by the Dakotas Funds alleged that Grand Electric did not submit reports and

---

[1] The complaint also lists the Dakotas Areawide IBEW-NECA Vacation and Holiday
Plan and the Trustees of the Dakotas Areawide IBEW-NECA Vacation and Holiday Plan as
defendants, but Grand Electric dismissed these two defendants from the action on October 27,
2009.  (ECF No. 44.)

contributions that were required under the terms of the collective bargaining agreement known as "the Inside Agreement." (Counterclaim ¶¶ 4, 6-12, Prayer for Relief ¶¶ 1-2, ECF No. 60 (citing, inter alia, ERISA section 515, 29 U.S.C. § 1145).) The counterclaim filed by the Electrical Fund alleged that Grand Electric did not submit reports and contributions required under the terms of "the Inside Agreement" and "the Sound and Communications Agreement." (Counterclaim ¶¶ 1, 10-17, ECF No. 61 (citing, inter alia, ERISA section 515, 29 U.S.C. § 1145).) On April 19, 2010, the Dakotas Funds added a counterclaim alleging that they had a right to audit Grand Electric's records. (Counterclaim ¶¶ 18-25, ECF No. 77.)

In April 2010, Grand Electric filed a motion for summary judgment against all of the defendants, (ECF No. 70), and Local 265 filed a motion for summary judgment on its counterclaim against Grand Electric (ECF No. 89). On June 30, 2010, I denied Local 265's motion for summary judgment. (ECF No. 109.) Local 265 filed a motion for reconsideration of this decision, (ECF No. 110), which was denied, (ECF No. 118). I granted Grand Electric summary judgment "on its claim that its obligation to continue making benefit contributions pursuant to the [collective bargaining] Agreements ends on the Agreements' termination dates," but I declined to resolve most of the issues raised in Grand Electric's motion until the defendants had an adequate opportunity to complete discovery. (Mem. & Order at 16, ECF No. 109.)

Grand Electric filed an amended complaint on November 24, 2010, adding a claim for restitution against the Dakotas Funds and Electrical Funds. (ECF No. 134.) It also filed amended answers to the counterclaims filed by the Dakotas Funds and the Electrical Funds. (ECF Nos. 135-136.)

On March 30, 2011, the magistrate judge entered an order stating that Grand Electric's motion for summary judgment (which remained pending while the parties worked to complete discovery) was withdrawn, but that "[a]ll parties intend[ed] to file [new] summary judgment motions." (ECF No. 153.) Indeed, on May 4, 2011, all of the parties except Local 265 did file motions for summary judgment. (ECF Nos. 155, 158.)

I denied Grand Electric's motion for summary judgment in a memorandum and order dated July 25, 2011. (ECF No. 169.) I determined that Grand Electric's repudiation of the collective bargaining agreements did not violate the National Labor Relations Act, but nevertheless Grand

Electric was not entitled to a declaration stating that its obligation to make fringe benefits payments to the Funds ended on the date of the repudiation. (Mem. & Order at 16-19, ECF No. 169.) In that same memorandum and order, I concluded that the Funds were entitled to summary judgment on their claim against Grand Electric for unpaid benefit contributions and on Grand Electric's restitution claim. (See id. at 22-26.) I noted, however, that the specific amounts owed to the Funds remained to be determined. (Id. at 24, 26.)

The parties then filed a joint motion for the entry of judgment based on stipulated facts. (ECF No. 172.) This motion was granted, (ECF No. 173), and on August 9, 2011, I entered a judgment stating that the Dakotas Funds and Electrical Funds were entitled to contributions, liquidated damages, and interest totaling $9,518.53, (ECF No. 174). The judgment also states, "Requests for costs and attorney's fees should be made in accordance with all applicable Local Rules and governing statutes." (Judgment at 3, ECF No. 174.)

As noted previously, the Dakotas Funds and Electrical Funds have now filed motions for awards of attorney's fees and costs, (ECF Nos. 176, 181), and the Dakotas Funds, Electrical Funds, and Grand Electric have each filed motions to file under seal certain exhibits associated with the Funds' fee motions, (ECF Nos. 175, 180, 184). My analysis of these motions follows.

## II.   MOTIONS TO SEAL EXHIBITS

The Dakotas Funds have moved to seal Exhibit A to the affidavit of Amanda R. Cefalu, (ECF Nos. 179-1 & 179-2), which was filed by the Dakotas Funds in support of their motion for attorney's fees and costs, (ECF No. 176). (See Dakotas Funds' Mot. to Seal, ECF No. 175.) The exhibit is a detailed billing statement, thirty-nine pages in length. (See Cefalu Aff. ¶ 5, ECF No. 179.) The Dakotas Funds state that an order "sealing or limiting access" to Exhibit A should issue pursuant to Federal Rule of Civil Procedure 5.2(a) because Exhibit A "includes detailed descriptions of attorney time, mental impressions and reasons for certain actions taken by counsel and is therefore arguably protected by the attorney-client and/or work product doctrines." (Dakotas Funds' Motion to Seal at 1, ECF No. 175.) They add that "[i]t is necessary to file this document unredacted to comply with [Nebraska Civil Rule] 54.4, which requires detailed explanations of attorney time billed." (Id.)

4

I turn first to the question of whether the exhibit should be sealed pursuant to Federal Rule of Civil Procedure 5.2(a).  That rule states,

> Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing must include only:
> (1)     the last four digits of the social-security number and taxpayer-identification number;
> (2)     the year of the individual's birth;
> (3)     the minor's initials; and
> (4)     the last four digits of the financial-account number.

Also, Rule 5.2(b)(5) and (d) indicate that a court may order a filing to be made under seal without redaction, and thereby excuse the filer from the requirements of Rule 5.2(a).

The Dakotas Funds do not claim that Exhibit A includes any of the information that is subject to redaction under Rule 5.2(a), and my review of the exhibit has not revealed any unredacted social security numbers, tax identification numbers, birth dates, names of minors, or financial account numbers.  I also note that Nebraska Civil Rule 54.4, which sets forth guidelines for fee applications in this court, does not require attorneys to disclose any information covered by Rule 5.2(a).  In short, I am not persuaded that Exhibit A ought to be sealed pursuant to Rule 5.2.

Nor am I persuaded that the exhibit should be sealed pursuant to the attorney-client or work product privileges.  It is the Dakotas Funds' burden to establish that either of the privileges is applicable, see, e.g., Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997); Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985), and the Dakotas Funds have failed to meet this burden.  There has been no showing that the exhibit–or any portion thereof–contains privileged material.  On the contrary, Ms. Cefalu states in her affidavit that portions of Exhibit A already have been "redacted to preserve the attorney-client privilege and/or work product doctrine." (Cefalu Aff. ¶ 5, ECF No. 179.)  This statement undermines the Dakotas Funds' claim that Exhibit A ought to be sealed to "preserve" privileged information, and it negates their claim that "it was necessary to file [Exhibit A] unredacted" to comply with this court's local rules.  (Dakota Funds' Mot. to Seal at 1, ECF No. 175.)

Moreover, by making a request for attorney's fees, the Dakotas Funds placed the billing statement at issue, and thereby waived their claim that Exhibit A is privileged.  See, e.g., Ideal

Electronic Security Co., Inc. v. International Fidelity Insurance Co., 129 F.3d 143, 151-52 (D.C. Cir. 1997). The Dakotas Funds also waived the privileges by voluntarily disclosing Exhibit A to the other parties in this case. E.g., Cedar Rapids Lodge & Suites, LLC v. JFS Development, Inc., No. C 09-0175, 2010 WL 2836789, at *2 (N.D. Iowa July 19, 2010) (citing In re Grand Jury Proceedings, 841 F.2d 230, 234 (8th Cir. 1988)). See also Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997) ("[D]isclosure to an adversary waives work product protection as to items actually disclosed."). In other words, even if I were to assume that the exhibit contains privileged material, neither the attorney-client nor the work product privilege may be invoked under the present circumstances. The Dakotas Funds' exhibit will not be sealed.

The Electrical Funds have filed a motion to seal their billing statement, which is marked as Exhibit A to the Declaration of Lauren M. Fletcher, (ECF No. 181-1), for reasons similar to those cited by the Dakotas Funds. (See Electrical Funds' Mot. to Seal, ECF No. 180.) Specifically, the Electrical Funds state that their exhibit is "arguably protected by the attorney client and/or work product doctrines" because it "includes detailed descriptions of attorney time, mental impressions and reasons for certain actions taken by counsel," and they claim that it was "necessary to file this document unredacted to comply with [Nebraska Civil Rule] 54.4, which requires detailed explanations of attorney time billed." (Electrical Funds Mot. to Seal at 1, ECF No. 180.) I find that the Electrical Funds waived the attorney-client and work product privileges by placing their fees at issue. Their motion to seal the exhibit will be denied.

Finally, Grand Electric has filed a motion to seal all of the exhibits that it has submitted in response to the Funds' motions for attorney's fees. (ECF No. 184.) Some of these exhibits are excerpts from the Dakotas Funds and Electrical Funds billing statements. (See Pl.'s Index, Exs. 1, 3, 5, 7, 8, ECF Nos. 186-1, 186-3, 186-5, 186-7, 186-8.) Others are described as "adding machine tapes." (See Pl.'s Index, Exs. 2, 4, 6, ECF Nos. 186-2, 186-4, 186-6.) Others include the Dakotas Funds' responses to Grand Electric's interrogatories and requests for production of documents, (Pl.'s Index, Ex. 9, ECF No. 186-9); the Dakotas Funds' supplemental responses to Grand Electric's interrogatories and requests for production of documents, (Pl.'s Index, Ex. 10, ECF No. 186-10); Local 265's responses to Grand Electric's interrogatories and requests for production of documents, (Pl.'s Index, Ex. 11, ECF No. 186-11); the Electrical Funds' responses to Grand Electric's

interrogatories and requests for production of documents, (Pl.'s Index, Ex. 12, ECF No. 186-12); and the Electrical Funds' supplemental responses to Grand Electric's interrogatories and requests for production of documents, (Pl.'s Index, Ex. 13, ECF No. 186-13).  Grand Electric's last exhibit is an affidavit signed by Adam J. Prochaska.  (Pl.'s Index, Ex. 14, ECF No. 186-14.)  Echoing the Electrical Funds' motion to seal, Grand Electric argues that all of its exhibits must be sealed because they "include detailed descriptions of attorney time, mental impressions and reasons for certain actions taken by counsel and [are] therefore arguably protected by the attorney-client and/or work product doctrines."  (Pl.'s Mot. to Seal at 1, ECF No. 184.)  After carefully reviewing these documents, I find that Grand Electric has not shown that any of them fall within the protection of the attorney-client privilege or the work product doctrine; moreover, to the extent that any privilege might have been applicable, it has been waived.  Grand Electric's motion to seal will be denied.

### III.   MOTIONS FOR ATTORNEY'S FEES AND COSTS

The Dakotas Funds have filed a motion for attorney's fees and costs, (ECF No. 176), and the Electrical Funds have filed a motion for attorney's fees (ECF No. 181).[2]  I have analyzed these motions, and my findings of fact and conclusions of law are set forth below.  See Fed. R. Civ. P. 54(d)(2)(C) (citing Fed. R. Civ. P. 52(a)).

#### A.   The Dakotas Funds' Motion for Attorney's Fees and Costs

1.   An Award of Reasonable Attorney's Fees and Costs  is Mandatory Under ERISA §
     502(g)(2)

The Dakotas Funds argue that they are entitled to an award of attorney's fees and costs under section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).  Section 502(g)(2) states, "In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant."  29 U.S.C. § 1132(g)(2)(D) (emphasis added).  The Dakotas Funds have obtained a judgment in their favor on their counterclaim, which was based on section 515 of ERISA, 29 U.S.C. § 1145.  (See ECF Nos. 169, 174.)  Therefore,

---

[2] The Electrical Funds filed a separate bill of costs, (ECF No. 187), and those costs have been taxed against Grand Electric, (ECF No. 189).

reasonable attorney's fees and costs must be awarded to the Dakotas Funds.  See Greater Kansas City Laborers Pension Fund v. Thummel, 738 F.2d 926, 931 (8th Cir. 1984).

Citing International Brotherhood of Electrical Workers, Local No. 22 Plans A & B v. Nanco Electric Inc., 790 F.2d 59, 62 (8th Cir. 1986), Grand Electric argues that section 502(g)(2) does not make an award of attorney's fees mandatory.  (See Pl.'s Br. at 6, ECF NO. 185.)  It seems to me, however, that Nanco Electric involved special circumstances that are not present in the instant case.  In Nanco Electric, a union filed an action to enforce the terms of a collective bargaining agreement.  Prior to the filing of the suit, Nanco refused to make contributions to the union's trust funds.  After the suit was filed, the parties settled an unfair labor practice charge that was pending before the National Labor Relations Board.  Pursuant to the terms of this settlement, Nanco paid the delinquent amounts to the union's trust funds.  See id. at 60.  The union's suit against Nanco progressed, but the parties stipulated that Nanco had paid all amounts owed to the trust fund at the expiration of the collective bargaining agreement, and the union's attorney told the district court that the union was not claiming attorney's fees for those payments.  Id. at 60-61, 62.  The union later sought to recover attorney's fees for the collection of the delinquent contributions, however, arguing that attorney's fees are mandatory "in any case to collect delinquent contributions by the employer to an employee pension plan under a collective bargaining agreement in which judgment in favor of the plan is awarded."  Id. at 62 (citing, inter alia, 29 U.S.C. § 1132(g)(2)(D)).  Noting that the delinquent contributions had been paid before trial and that "the union's attorney specifically declined to seek attorneys' fees for the collection of these funds," the Eighth Circuit rejected the union's claim for attorney's fees.  Id.

The instant case is clearly distinguishable from Nanco Electric.  Grand Electric did not pay the delinquent contributions prior to the entry of judgment, nor did the defendants' attorneys specifically decline to seek attorney's fees for their collection efforts.  In short, the court rejected the union's claim for attorney's fees in Nanco Electric for reasons that are simply not implicated in this case.

Grand Electric also argues "that there is no presumption in favor of awarding attorney fees to a prevailing party in an ERISA case," (Pl.'s Br. at 6-7, ECF No. 185 (citing Local 22 International Brotherhood of Electrical Workers v. Sadler Electric, Inc., No. 8:05CV523, 2006 WL 3511324, at

*1 (D. Neb. Dec. 5, 2006))), adding that I should consider a number of factors before exercising my discretion to award fees, including "(1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions," (Pl.'s Br. at 7 (quoting Sadler Electric, 2006 WL 3511324, at *1)).  Sadler Electric does hold that district courts should exercise discretion in awarding attorney's fees under ERISA.  See 2006 WL 3511324, at *1 (citing Starr v. Metro Systems, Inc., 461 F.3d 1036, 1040-41 (8th Cir. 2006); Martin v. Arkansas Blue Cross & Blue Shield, 299 F.3d 966, 972 (8th Cir. 2002)). However, the cases cited in Sadler Electric involve attorney fee requests made pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), which contains terms that are materially different than those appearing in section 502(g)(2).[3]  I am not persuaded that section 502(g)(2) leaves me the discretion to deny the defendants reasonable attorney's fees and costs.  Moreover, the factors outlined in Sadler Electric are simply not relevant when a party claims attorney's fees under this section.  See Greater Kansas City Laborers Pension Fund v. Thummel, 738 F.2d 926, 931 (8th Cir. 1984).

Finally, Grand Electric argues that the Funds' fee requests require "extremely critical" reviews because "Nebraska law generally disfavors attorney fee awards."  (Pl.'s Br. at 36, ECF No. 185.)  While it is true that a federal court "may take direction from the law of the state in which it sits" when ERISA fails to address a particular issue, Regents of the University of Michigan v. Employees of Agency Rent-A-Car Hospital Association, 122 F.3d 336, 339 (6th Cir. 1997), ERISA clearly addresses the issue of attorney's fees.  In short, I shall not consider Nebraska law when analyzing the defendants' fee requests, and I am not persuaded that section 502(g)(2) fee awards are disfavored.

---

[3] Unlike section 502(g)(2), which states that the court "shall award" attorney's fees, section 502(g)(1) states that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).

9

The amount of the attorney's fees award remains to be determined.  Though a reasonable fee award is mandatory, the amount of the fee is a matter that falls within the court's discretion.  E.g., Thummel, 738 F.3d at 931.  A useful starting point for determining the amount of a reasonable fee is the "lodestar," which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (discussing attorney's fees awarded under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988); Bd. of Trustees of the Hotel & Restaurant Employees Local 25 v. JPR, Inc., 136 F.3d 794, 801 (D.C. Cir. 1998) (applying the lodestar method to calculate reasonable attorney's fees under 29 U.S.C. § 1132(g)(2)).  In this case, the Dakotas Funds seek a total of $36,268.25 in attorney's fees, (see Dakotas Funds' Mot. at 2, ECF No. 176), which "reflect over 178 hours of work performed at an average hourly rate of approximately $215.00," (Dakotas Funds' Br. at 5, ECF No. 177).  Grand Electric does not claim that the hourly rate submitted by the Dakotas Funds is unreasonable.  (Pl.'s Br. at 16, ECF No. 185.)  It does argue, however, that the number of hours is excessive and that the billing records submitted by the Dakotas Funds are deficient.  (See generally id.)  I shall consider each of Grand Electric's arguments in turn and note whether they merit a reduction in the number of hours claimed by the Dakotas Funds.

2.   Whether the Fee Should Be Reduced Because Some of the Contributions Recovered by the Funds Were Not Delinquent at the Time of the Filing of the Counterclaims

Grand Electric argues that the defendants should not be allowed to recover attorney's fees and costs associated with the collection of contributions that did not become delinquent until after the defendants filed their counterclaims.  (See Pl.'s Br. at 4, ECF No. 185.)  In support of its argument, Grand Electric cites Carpenters & Joiners Welfare Fund v. Gittleman Corp., 857 F.2d 476, 478 (8th Cir. 1988), wherein the Eighth Circuit held that the term "unpaid contributions" in section 502(g)(2) means contributions that were unpaid at the time of the filing of the collection suit.

Grand Electric's argument is unpersuasive.  In Gittleman Corp., the Eighth Circuit found that liquidated damages based on delinquent contributions were not available when the delinquent contributions were paid before the suit was filed.  See 857 F.2d at 478 ("[S]ince there are no 'unpaid contributions,' the funds are not entitled to liquidated damages under section 1132(g)(2) because the availability of those damages is keyed to the existence of 'unpaid contributions.'").  Here, in contrast,

10

Grand Electric did not pay delinquent contributions before the suit was filed, and the issue of the moment is not liquidated damages, but attorney's fees. It is noteworthy that unlike section 502(g)(2)(C), section 502(g)(2)(D) does not link requests for attorney's fees and costs to the amount of "unpaid contributions"; rather, it states that a plan must be awarded "reasonable attorney's fees and costs of the action." In summary, <u>Gittleman Corp.</u> is inapposite, and I shall not reduce the Dakotas Funds' fee request on the ground that not all of the delinquent contributions recovered by the defendants were "unpaid" at the time of the filing of their counterclaim.[4]

<u>3.     Whether Fees and Costs Incurred Prior to March 15, 2010, Must Be Deducted from the Award</u>

Grand Electric argues that because the Dakotas Funds can only recover attorney's fees and costs associated with their action to collect delinquent contributions, they cannot recover fees and costs incurred prior to March 15, 2010. (Pl.'s Br. at 5-6.) This argument is persuasive. Section 502(g)(2) authorizes awards of fees in actions to enforce ERISA section 515; it does not allow the defendants to recover attorney's fees for services that have no connection with the collection of delinquent contributions. I have reviewed Exhibit A to the Affidavit of Amanda R. Cefalu, which lists the legal services provided to the Dakotas Funds in this case, and I see that it includes several entries that predate–and, on their face, bear no relation to–the Dakotas Funds' counterclaim for delinquent contributions. <u>See</u> Cefalu Aff. ¶ 5, ECF No. 179; Cefalu Aff. Ex. A at 1-7, ECF No. 179-1. Indeed, before filing their counterclaims, the defendants argued that its section 515 claims against Grand Electric were, at best, merely a theoretical possibility. (<u>See, e.g.</u>, Dakotas Funds' Supp. Br. at 2-5, ECF No. 56; Electrical Funds' Supp. Br. at 1-2, ECF No. 57.) Because there is no indication that any of the entries that predate March 15, 2010, relate to the Dakotas Funds' action to collect delinquent contributions, the hours listed in these entries will be deducted from the Dakotas Funds' claim. More specifically, 29.75 hours will be deducted from the 178 hours claimed by the Dakotas Funds, which reduces the number of hours reasonably expended on the collection action to 148.25.

_____

    [4] The question of whether the fee award must be proportional to the amount of contributions recovered will be addressed below.

4.      Whether Fees and Costs Incurred in the Defense of Grand Electric's Declaratory Judgment
        Action Must Be Deducted from the Award

Relatedly, Grand Electric argues that even after the Dakotas Funds filed their counterclaim on March 15, 2010, much of the litigation continued to focus upon Grand Electric's declaratory judgment claim, and the Dakotas Funds should not be allowed to recover the attorney's fees and costs that they incurred in resisting this claim.  (Pl.'s Br. at 9-11, ECF No. 185.)  Grand Electric adds,

> Defendant Funds have the burden of proving their entitlement to attorneys' fees and costs and the Defendant Funds have failed to present the Court with detailed itemizations of their time and costs.  Defendant Funds have not itemized what fees and costs were attributable to the delinquent contribution action and what fees and costs were attributable to the one-man unit declaration.  This failure prevents Grand Electric from splitting out the reimbursable portions.  Defendants' motion should, therefore, be overruled in its entirety because Grand Electric should not be required to pay any attorneys' fees or costs related to tasks (or potions of tasks) that do not explicitly fall within the statute.
>
> In the alternative, if the Court declines to overrule Defendant Funds' Motions in their entirety, Grand Electric respectfully requests that, after all other adjustments are made as described herein[,] the final numbers for each of the Defendant Funds should be reduced by no less than 50%.

(Id. at 11.)

I agree with Grand Electric that the Dakotas Funds are entitled only to "that portion of [their] attorney's fees attributable to [their] successful counterclaim" to recover delinquent contributions. Penn Elastic Co. v. United Retail & Wholesale Employees Union, Local 115 Joint Pension Fund, 792 F.2d 45, 48 (3d Cir. 1986).  See also Brick Masons Pension Trust v. Industrial Fence & Supply, Inc., 839 F.2d 1323 (9th Cir. 1988) (holding that trust funds could recover reasonable attorney's fees on appeal attributable to the issue on which they prevailed); United Automobile Workers Local 529 Security Dept. v. Metro Auto Center, No. 03-2123, 2005 WL 5909017, at *1-2 (D.N.J. Oct. 20, 2005).  It would not be reasonable to allow the Dakotas Funds to recover attorney's fees and costs that have no connection with their counterclaim.

It seems to me, however, that Grand Electric's argument depends on whether its declaratory judgment action is "separate from the Defendant Funds' claims for unpaid contributions." (Pl.'s Br. at 10, ECF No. 185.)  A close examination of the issues litigated in this case dispels that notion.

Grand Electric sought a declaration that it "properly and effectively repudiated and terminated two collective bargaining agreements which terminated any obligation that Grand Electric had to contribute fringe benefits to Defendant Funds or Fund Trustees." (Compl. ¶ 19, ECF No. 1. See also Am. Compl. ¶ 19, ECF No. 134.)  In other words, Grand Electric attempted to obtain a declaratory judgment that would free it from making benefits contributions under the terms of the collective bargaining agreements and prevent the Funds from recovering those unpaid contributions.  Indeed, Grand Electric successfully argued that its claim against the Defendant Funds fell within this court's subject matter jurisdiction because the declaratory judgment "would resolve an issue of federal law between the parties and would preclude the defendants from asserting a right to recover contributions under ERISA." (Second Mem. & Order on Defs.' Mots. to Dismiss at 5, ECF No. 59 (emphasis added). See also, e.g., Pl.'s Supp. Reply Br. at 4, ECF No. 58.)  Grand Electric now argues that its declaratory judgment action had no connection with the Defendant Funds' counterclaims to recover delinquent contributions.  I am not persuaded.  Grand Electric's claim and the Defendant Funds' counterclaims address the same issue (i.e., liability for delinquent contributions) from different sides, and I cannot say that the hours expended by the Funds in defense of Grand Electric's declaratory judgment action were not reasonably expended in an effort to enforce ERISA section 515.

I found above that the hours expended by the Defendant Funds prior to the filing of their counterclaims bear no relation to the enforcement of ERISA section 515, and therefore those hours must be deducted from the fee award.  At first blush, that finding might appear to be in tension with my finding that Grand Electric's declaratory judgment action was not separate and distinct from the section 515 counterclaims.  It merits emphasis, however, that at the time of the filing of Grand Electric's complaint, Grand Electric had not yet failed to make contributions, (see, e.g., Dakotas Funds Counterclaim ¶ 10), and the defendants believed that their section 515 claims were unripe, (see Dakotas Funds' Supp. Br. at 2-5, ECF No. 56; Electrical Funds' Supp. Br. at 1-2, ECF No. 57).

In summary, I find that the hours expended by the Funds' attorneys prior to the filing of the counterclaims were not related to the enforcement of ERISA section 515.  After the counterclaims were filed, however, the Funds opposed Grand Electric's claims on their merits, and at this point all of their efforts were reasonably related to the enforcement of section 515.  I shall not reduce the

13

Funds' fee requests on the ground that Grand Electric's claims were entirely separate from the Funds' collection actions.[5]

5.    Whether "Double-Billed" Attorney Conferences Must Be Deducted from the Award

Grand Electric argues that I should exclude excessive, duplicative, and unnecessary hours from the Dakotas Funds' fee request. (Pl.'s Br. at 16, 18-19, ECF No. 185.) Specifically, it argues that when two of the Dakotas Funds' attorneys conference with one another, those conferences should not be "double-billed" in the names of both attorneys. Rather, the "smaller duplicative time entry" should be deleted from the fee request. I find, however, that it is reasonable to expect some amount of billing for conferences between attorneys, and here the amount billed for such conferences is relatively small. Indeed, Grand Electric argues that only one hour of "attorney conference" time should be stricken from the request. (See Pl.'s Br. at 18-19, ECF No. 185. See also Pl.'s Ex. 7 at 1-2, ECF No. 186-7.) Moreover, the "duplicative" entries highlighted by Grand Electric have already been stricken from the request on the ground that they predate the filing of the Dakotas Funds' section 515 claim. The fee request will not be reduced further on the ground that it includes duplicative entries.

6.    Whether Certain Billing Entries Fail to Comply with This Court's Fee Application
       Guidelines

Grand Electric argues that many of the entries appearing in the Dakotas Funds' billing records must be stricken because they do not comply with Nebraska Civil Rule 54.4. (Pl.'s Br. at 19-28, ECF No. 185.) More specifically, it claims that 2.75 hours should be deducted because "attorneys conferences" are not documented adequately; 14.25 hours should be deducted because "legal research" is not documented adequately; and 39.75 hours should be deducted because the people who performed certain work are not identified. (See Pl.'s Br. at 23, 25-26, ECF No. 185.)

---

[5] For the same reasons, I shall not reduce the Funds' fee requests on the ground that it was unnecessary for them to review Grand Electric's work records predating July 2009. (See Pl.'s Br. at 28-31, ECF No. 185.) This records review was a necessary component of the Funds' opposition to Grand Electric's "one man unit" theory–and this theory formed the basis of Grand Electric's claim that it no longer had any obligation to contribute to the Funds. (See, e.g., Mem. & Order on Cross Mots. for Summ. J. at 5-9, 12-16, ECF No. 169.)

Grand Electric also claims that deposition expenses must be stricken from the award due to their inadequate documentation.  (See id. at 27-28.)  I shall consider each of these points in turn.

Nebraska Civil Rule 54.4(a)(1)(A) states that attorneys seeking fees "[f]or a conference" should "state who was present, the subjects discussed, and how long it lasted."  Grand Electric highlights five separate entries in the Dakota Funds' billing records that allegedly fail to comply with this rule.  (See Pl.'s Index, Ex. 7 at 1-2, 14, ECF No. 186-7.)  All but one of these entries have already been stricken from the request on the ground that they bear no relation to the Dakotas Funds' section 515 action.  The remaining entry states that 0.5 hours were billed for "Conference with Assistant Smith regarding review of file and outline to draft of what documents have not produced to date [sic];" and "telephone conference with Attorney Fletcher . . . regarding discovery and potential motion to compel discovery."  (Id. at 14.)  I find that the entry states "who was present" and "the subjects discussed" with sufficient detail.  Although the entry does not indicate precisely how long each individual conference lasted, it does state that the two conferences lasted a total of 0.5 hours.  I find that the conferences are documented adequately, and the time spent on them was reasonable.  The entry will not be stricken.

The local rules state that attorneys seeking fees for legal research should "state who did it, the subjects and issues researched, and whether the results were incorporated into a brief, motion, or pleading."  NECivR 54.4(a)(1)(B).  Grand Electric has marked seven entries in the Dakota Funds' billing records that allegedly fail to comply with this rule.  (See Pl.'s Index, Ex. 7 at 2, 10-13, 22-23, ECF No. 186-7.)  The entry that appears on page two of the records has already been stricken from the request, and the remaining entries state that a total of 15.75 hours were spent on research.[6]  I have carefully studied these entries, and I note that many of them do not state specifically "the subjects

---

[6] As noted previously, Grand Electric argues that 14.25 hours dedicated to legal research should be stricken from the fee request.  (See Pl.'s Br. at 25, ECF No. 185.)  It is difficult to account for the discrepancy between Grand Electric's and my calculations.  Grand Electric states that the entries it seeks to strike are marked in purple on Exhibit 7.  (See id.)  I find only two entries marked in purple, however, and these entries account for a total of only 8 hours.  (See Pl.'s Index, Ex. 7 at 11-12, ECF No. 186-7.)  A number of other entries for "research" are marked in orange; including these entries in the calculation raises the total to 15.75 hours (after the entry appearing on page two, which has already been stricken, is excluded).  (See id. at 10, 13, 22-23.)

and issues researched." (See, e.g., id. at 10-13.) They do state, however, that the research was performed in order to complete specific memoranda that were filed in this case, (see id.), which allows me to determine whether the research hours were reasonably expended. After due consideration, I find that the billing records provide adequate documentation for the fees requested by the Dakotas Funds, and I find that the number of research hours listed in the highlighted entries is reasonable. These hours will not be stricken from the fee award.

Nebraska Civil Rule 54.4(a)(2) states that attorneys seeking a fee award should "[i]dentify the status and background (attorney, paralegal, law student) of each person performing an item of work." Grand Electric argues that 16 entries fail to comply with this rule. (See Pl.'s Index, Ex. 7 at 2, 9-13, 15-16, 22-23, ECF No. 186-7.) The entry that appears on page two of Grand Electric's exhibit has been stricken from the fee request. The remaining entries state that 39 hours have been billed for various tasks performed by individuals identified only as "LAF," "NWK," "HCS," and "EMM." (See id. at 9-13, 15-16, 22-23. See also Cefalu Aff., ECF No. 179 (identifying three attorneys who worked on this case, but failing to identify anyone with the initials LAF, NWK, HCS, or EMM).) The Dakotas Funds' failure to "identify the status and background" of these people prevents me from determining whether the hours claimed in their entries are reasonable. I shall therefore strike these entries from the fee request and reduce the hours claimed by the Dakotas Funds from 148.25 to 109.25.

7.     Whether the Fee Award Must Be Proportional to the Damages Recovered by the Funds

Grand Electric argues that the Dakotas Funds' are entitled to recover only "reasonable" attorney's fees, and it submits that it is not reasonable for them to "request a total of $41,001.25 in attorneys' fees and expenses to obtain a stipulated judgment of $7,875.59." (Pl.'s Br. at 15, ECF No. 185.) I take Grand Electric's argument to be that the attorney's fees award must be proportional to the damages obtained by the Dakotas Funds.

It appears that the Eighth Circuit has not yet addressed the issue of whether it is appropriate to reduce a section 502(g)(2) attorney's fees award on the ground that the fees requested are disproportionately greater than the amount of the recovered contributions. The courts that have considered this issue have reached different conclusions. See United Automobile Workers Local 259 Social Security Dept. v. Metro Auto Center, 501 F.3d 283, 295 (3d Cir. 2007) (holding that

16

"requiring proportionality would neglect the language of ERISA and frustrate its purpose"); Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, (6th Cir. 1995) (holding that attorney's fee award must be reasonable, but there is no requirement that it be proportional to the amount of the underlying award of damages); Moriarty v. Svec, 233 F.3d 955, 967-68 (7th Cir. 2000) (remanding fee order with instructions to consider "proportionality factors" because attorney's fee award was a "large multiple[]" of the damages recovered). After careful consideration, I shall not make an adjustment to the Dakotas Funds' fee award in the interests of proportionality.

First, I agree with the Sixth Circuit's observation that "[n]othing in the text of 29 U.S.C. § 1132(g)(2)(D) suggests that to be 'reasonable,' fees must be proportional." Metro Auto Center, 501 F.3d at 293. I also agree with the court that a proportionality rule would undermine the purpose of section 502(g)(2). As the Sixth Circuit explained,

> When delinquencies are small, the cost of recovery may be disproportionate, and requiring proportionality would, in effect, discourage plans from taking their claims to federal courts. Moreover, § 1132(g)(2) was enacted to encourage employers to make timely contributions, assist plans in their recovery of delinquent contributions, and discourage excessive litigation by defendants. Funds are burdened by employers who needlessly extend or complicate litigation for small delinquencies just as they are burdened by employers who needlessly extend or complicate litigation for larger delinquencies. We do not read § 1132(g)(2) to limit the fee award of a plan suffering the former situation merely because the amount of underlying recovery is less.

Id. at 295.

Moreover, even if it is permissible to make a proportionality adjustment in some circumstances, the instant fee request does not present a compelling case for such an adjustment. I have reduced the Dakotas Funds' attorney's fees award from $36,268.25 (approximately 178 hours of work at $215 per hour) to $23,488.75 (109.25 hours of work at $215 per hour). The Dakotas Funds obtained a judgment in the amount of $7,875.59, including contributions, liquidated damages, and interest. (See Judgment at 2, ECF No. 174.) Thus, the fee award exceeds the damages award by a factor of three. After considering the complexity of this case and the purposes of section

17

502(g)(2), I find that a fee award of $23,488.75 need not be adjusted downward in the interests of proportionality.[7]

In summary, I find that the Dakotas Funds are entitled to an award of attorney's fees in the amount of $23,488.75, based on 109.25 hours of work performed at an average hourly rate of $215 per hour. This fee is reasonable under the totality of the circumstances, including the shortcomings in the Dakotas Funds' billing records.

8.    Whether the Costs Requested by the Dakotas Funds May Be Included in the Award

In addition to attorney's fees, the Dakotas Funds seek to recover $4,734.00 in costs. (See, e.g., Dakotas Funds' Mot. at 1, ECF No. 176.) In opposition to this request, Grand Electric argues that many of the costs claimed by the Dakotas Funds are unrecoverable because they are not "permitted by 28 U.S.C. § 1920." (Pl.'s Br. at 31, ECF No. 185. See also id. at 31-32 (quoting Stark v. PPM America, Inc., No. 01 C 1494, 2003 WL 21223268 (N.D. Ill. May 23, 2003)).) I agree with Grand Electric that the taxation of costs is governed by 28 U.S.C. § 1920, which allows only the following costs to be taxed:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

I also agree with Grand Electric that many of the "costs" sought by the Dakotas Funds are nontaxable–that is, they are not listed in § 1920. (See Dakotas Funds' Index, Ex. C, ECF No. 179-4.)

---

[7] It merits mention that in Moriarty, the Seventh Circuit did not hold that the fees awarded by the district court were so disproportionate as to constitute an abuse of discretion; rather, the court held "only that the district court should consider such proportionality factors in exercising its discretion in fashioning a reasonable attorney's fee." 233 F.3d at 968. I have considered the possibility that a proportionality adjustment might be necessary–even though well-reasoned opinions hold that such adjustments are not appropriate–and I find that no further adjustment ought to be made.

Nevertheless, I find that–with some exceptions that will be discussed below–the nontaxable costs sought by the Dakotas Funds "constitute reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys" that "are part of the reasonable attorney's fees to be awarded to [them]." Nelson v. Metropolitan Life Insurance Co., Civil No. 07-2326 ADM/JSM, 2010 WL 153040, at *13 (D. Minn. Jan. 11, 2010) (citing, inter alia, Pinkham v. Camex, Inc., 84 F.3d 292, 294-95 (8th Cir. 1996); Emmenegger v. Bull Moose Tube Co., 33 F. Supp. 2d 1127, 1133 (E.D. Mo. 1998)).[8]  In other words, the Dakotas Funds erred by categorizing many of their expenses as "costs," but this does not mean that they cannot be included in the attorney's fee award.

I do find, however, that certain expenses claimed by the Dakotas Funds are unrecoverable. First, I shall exclude from the award expenses that predate the filing of the Dakotas Funds' counterclaim on March 15, 2010, on the ground that these expenses were not incurred in connection with an action to enforce ERISA section 515.  By my calculations, this results in a deduction of $71.57.  (See Dakotas Funds' Index, Ex. C at 1-2, ECF No. 179-4.)  I shall also exclude expenses associated with computer-assisted legal research.  See Standley v. Chilhowee R.-IV School Dist., 5 F.3d 319, 325 (8th Cir. 1993) (holding that expenses for computer-assisted legal research cannot be added to a fee award).  The award will therefore be reduced by an additional $226.44.

Grand Electric argues that certain deposition expenses must be stricken from the award because the Dakotas Funds have failed to document those expenses adequately.  (See Pl.'s Br. at 27-28, ECF No. 185.)  In support of its argument, Grand Electric cites Nebraska Civil Rule 54.4(b)(2), which states that parties seeking deposition expenses should "list the court reporter's name, the date of the taking, the deponent's identity, the purpose of the deposition (discovery or evidentiary), and the use made of the deposition."  It then refers me to two entries in the Dakotas Funds' billing records that, according to Grand Electric, do not comply with this rule.  The first of these two entries states that the Dakotas Funds were billed $626.30 for transcripts of the depositions of Andrew and Tammy Ingwerson.  (See Cefalu Aff. Ex. G, ECF No. 179-8.)  The documents submitted by the

---

[8] I note in passing that the Dakotas Funds have shown that their attorneys have, in fact, billed them for a total of $4,734.00 in costs.  (See Hannestad Aff. ¶ 4, ECF No. 178.)  I find that, save for the exceptions noted below, the expenses sought by the Dakotas Funds are of the sort that are "normally charged to clients by attorneys," and are therefore recoverable as part of the fee award.  Nelson, 2010 WL 153040, at *13.

19

Dakotas Funds state the court reporter's name, the date of the depositions, and the names of the deponents.  (See id.; see also Cefalu Aff. ¶ 8(viii), ECF No. 179.)  They do not indicate, however, whether the depositions were taken for discovery or evidentiary purposes, nor do they describe the use that was made of the depositions.  Despite these shortcomings, I find that the documentation is adequate, and the expenses associated with the Ingwersons' depositions are reasonable.  This entry will not be stricken from the fee award.

The second entry highlighted by Grand Electric states that on December 6, 2010, the Dakotas Funds' attorneys issued a $106.05 check to Lehman Reporting Services for a deposition.  (See Cefalu Aff. Ex. C at 9, ECF No. 179-4.)  The records do not state court reporter's name, the date of the deposition, the name of the deponent, the purpose of the deposition, or the use made of the deposition.  The record does not allow me to determine whether the expense associated with this deposition is reasonable; therefore, I shall strike $106.05 from the award.

Based on the foregoing findings, the expenses sought by the Dakotas Funds will be reduced from $4,734.00 to $4,329.94.

9.      Whether the Award Should Be Reduced Because Grand Electric Lacks the Ability to Pay

Finally, Grand Electric argues that it is "unable to satisfy any award of the magnitude that Defendant Funds' . . . request," and that its "current financial situation constitutes a special circumstance which makes a full award unjust."  (Pl.'s Br. at 36, ECF No. 185.)   It adds that "a bankruptcy would be necessary if [Grand Electric] was required to pay for all of Defendant Funds' attorneys' fees."  (Id. at 37.)

A party's ability to pay a fee award is among the factors used to determine whether a court should exercise its discretion to award a fee.  In this case, however, a fee award is mandatory, and the Eighth Circuit has held that factors such as "ability to pay" have no bearing on whether the amount of the award is reasonable.  Greater Kansas City Laborers Pension Fund v. Thummel, 738 F.2d 926, 931 (8th Cir. 1984).  See also id. (citing Seymour v. Hull & Moreland Engineering, 605 F.2d 1105, 1117 (9th Cir. 1979); Kemmis v. McGoldrick, 706 F.2d 993, 998 (9th Cir. 1983) (listing factors that may be considered when deciding the amount of a reasonable fee in an ERISA case)).  The award will not be reduced further based on Grand Electric's "current financial situation."

20

In conclusion, I find that the Dakotas Funds are entitled to recover attorney's fees in the amount of $23,488.75, plus expenses in the amount of $4,329.94, for a total award of $27,818.69.

The Dakotas Funds ask that I amend the judgment so that it incorporates the fee award.  (See Dakotas Funds' Mot. at 2, ECF No. 176.)  They also ask that I allocate 53% of the award to the Dakotas and Western Minnesota Electrical Industry Workers Health and Welfare Fund (and its Trustees), and 47% of the award to the Dakotas Areawide Savings & Retirement Plan (and its Trustees).  (See Dakotas Funds' Br. at 6, ECF No. 177.)  This will be done.  The judgment will be amended to state that the Dakotas and Western Minnesota Electrical Industry Workers Health and Welfare Fund, and its Trustees, are awarded $14,743.91 in attorney's fees and expenses, and the Dakotas Areawide Savings & Retirement Plan, and its Trustees, are awarded $13,074.78 in attorney's fees and expenses.

### B.   The Electrical Funds' Motion for Attorney's Fees

The Electrical Funds seek $40,637.05 in attorney's fees, plus $825.35 in expenses, for a total award of $41,462.40.  (See Electrical Funds' Mot. ¶¶ 5-6, ECF No. 181.)   In opposition to the Electrical Funds' request, Grand Electric repeats many of the arguments that it submitted in opposition to the Dakotas Funds' request.  (See generally Pl.'s Br. at 2-37, ECF No. 185.)  For the reasons explained above in Part III.A., I must reject Grand Electric's arguments that ERISA section 502(g)(2) does not make an award mandatory; that the award must be reduced because certain contributions were not delinquent at the time of the filing of the Funds' counterclaims; that fees and expenses associated with the Electrical Funds' defense of Grand Electric's declaratory judgment action must be deducted from the award; and that the award must be reduced because Grand Electric lacks the ability to pay the full amount requested by the Electrical Funds.  On the other hand, I agree with Grand Electric that the Electrical Funds cannot recover fees and expenses that were incurred prior to the filing of their counterclaim on March 15, 2010.  (See supra Part III.A.3.)  For this reason, I shall deduct at total of $4,254.89 in attorney's fees from the Electrical Funds' award.  (See Pl.'s Index, Ex. 1 at 1-5, ECF No. 186-1; Pl.'s Index, Ex. 3 at 1-5, ECF No. 186-3; Pl.'s Index, Ex. 5 at 1-5, ECF No. 186-5.)

Grand Electric makes a number of additional arguments in favor of reducing the Electrical Funds' award.  I shall consider each of these arguments in turn.

1.      Whether Fees Incurred by Local 265 Must Be Stricken from the Award

The Electrical Funds' attorneys also represented Local 265, and legal work that was performed on behalf of Local 265 has been included in the Electrical Funds' motion for attorney's fees.  (See, e.g., Electrical Funds' Mot., Fletcher Decl. Ex. A at page 11 of 71, ECF No. 181-1 (indicating that the Electrical Funds' attorneys billed the IBEW 265 Vacation Fund for hours spent preparing a motion for summary judgment that was filed on behalf of Local 265).  See also Pl.'s Br. at 12-15, ECF No. 185.)  I agree with Grand Electric that the fees and expenses incurred by Local 265 cannot be included in the Electrical Funds' award.  I also agree with Grand Electric that the Electrical Funds' billing records make it difficult to determine with precision the amount of the fees and expenses that were  incurred by Local 265.   Therefore, I shall strike all entries from the fee request that include some work associated with the representation of Local 265.[9]  Accounting for entries that have already been stricken, this results in an additional $10,780.58 deduction from the Electrical Funds' award.

Grand Electric also argues that because "all of the work completed by [the Electrical Funds' attorneys] was at least partially completed for . . . Local 265," I should either deny the Electrical Funds' fee motion "in its entirety" or reduce the award "by no less than an additional 25%."  (Pl.'s Br. at 14-15, ECF No. 185.)  Even if some of the work performed for the Electrical Funds benefitted Local 265, however, it does not follow that the work was unrelated to the enforcement of ERISA section 515.  Also, I have already reduced the fee award by approximately 25% because the billing records include work performed for Local 265, and I am not persuaded that a further reduction is in order.

2.      Whether "Double-Billed" Work Must Be Deducted from the Award

Grand Electric argues that the Electrical Funds should not be allowed to recover fees for "excessive, duplicative, and unnecessary" attorney conferences,  intra-office memoranda, and other work that involved the efforts of more than one attorney.  (Pl.'s Br. at 17-18, ECF No. 185.)  Setting aside the billing entries that have already been stricken, it submits that $2,754.16 in duplicative fees must be excluded from the award.  (See Pl.'s Index, Exs. 1, 3, 5, ECF Nos. 186-1, 186-3, 186-5.)

---

[9] These entries are highlighted in Plaintiff's Exhibits 1, 3, and 5.  (See also Pl.'s Br. at 13, ECF No. 185.)

This represents approximately 18 hours of attorney time, assuming that the time was billed at an average rate of $155 per hour.[10]

As I noted above, it is reasonable to expect a certain amount of billing for conferences between attorneys. (See supra Part III.A.5.) It is also reasonable to expect attorneys to collaborate on certain tasks. In this case, however, I agree with Grand Electric that the amount of duplicative billing is excessive. Moreover, in many instances the records submitted by the Electrical Funds do not provide sufficient information to allow me to determine whether the attorneys are, in fact, double-billing their clients for conferences. (See infra Part III.B.3.) Due to the billing records' shortcomings, I shall strike the entire amount that, by my calculations, has been double-billed (and has not already been stricken from the award). The award will be reduced by $2,754.16.

3.     Whether Certain Billing Entries Fail to Comply with This Court's Fee Application
       Guidelines

Grand Electric argues that many of the Electrical Funds' billing entries must be stricken because they do not comply with Nebraska Civil Rule 54.4. (Pl.'s Br. at 19-28, ECF No. 185.) First, it claims that "attorney conferences" must be stricken from the award because the entries fail to identify who was present, fail to identify the subjects discussed, and/or fail to disclose the duration of the conference. (See id. at 21-23.) See also NECivR 54.4(a)(1)(A). Grand Electric's argument is well-taken. None of the billing entries for attorney conferences clearly identify the participants–though Grand Electric concedes that the participants can sometimes be inferred from the records. (See id. at 21. See also Pl.'s Exs. 1, 3, 5, ECF Nos. 186-1, 186-3, 186-5.) Also, many of the entries list attorney conferences in combination with other tasks, which makes it impossible for me to determine precisely how long those conferences lasted. Still other entries list "attorneys conference" without elaboration; such entries are clearly insufficient under the rules.

Grand Electric submits that I should reduce the Electrical Funds' fee award by a total of $17,355.34 due to the Funds' failure to document properly its attorney conferences. I have already stricken many of the "attorneys conference" entries, however, on the grounds that they are

---

[10]The attorney who appears to have performed the majority of the work on behalf of the Electrical Funds billed her time at a rate of $155 per hour. (See Electrical Funds' Mot., Fletcher Decl. Ex. A, ECF No. 181-1.)

duplicative or do not relate to the Electrical Funds' collection action.  (See supra Part III.B.1-2.)
Also, despite the records' shortcomings, not all of the "attorneys conferences" are so poorly
documented that I cannot determine whether the time spent on them was unreasonable.  I find that
an additional reduction of $2,000.00 is appropriate.

Next, Grand Electric argues that the Electrical Funds' award should be reduced by
$13,155.29 because the billing entries for legal research do not comply fully with Nebraska Civil
Rule 54.4(a)(1)(B).  (See Pl.'s Br. at 23-25, ECF No. 185.)  I agree with Grand Electric that some
of the Electrical Funds' legal research billing entries are insufficient; however, many of them provide
enough information for me to evaluate the reasonableness of the work, and many of them have
already been stricken from the award for reasons discussed above.  I find that no additional
adjustment ought to be made to the award to account for the deficiencies in the "legal research"
billing.

4.     Whether Costs and Expenses May Be Included in the Award

The Electrical Funds seek $825.35 in expenses for lodging, mileage, parking, and computer-
assisted legal research.  (Electrical Funds' Mot. ¶ 6, ECF No. 181.)

Grand Electric argues that the Electrical Funds' requests for copying expenses (totaling
$755.47) must be excluded from the award because they have not been supported adequately.  (See
Pl.'s Br. at 27, ECF No. 185.)  The copying costs will be excluded from the award–indeed, the
Electrical Funds have not incorporated a request for them into their motion for attorney's fees.  (See
Electrical Funds' Mot. ¶ 6, ECF No. 181.)  I note, however, that the copying costs have already been
taxed against Grand Electric.  (See Taxation of Costs, ECF No. 189.)[11]

Grand Electric also argues that the lodging, mileage, parking, and computer-assisted research
expenses must be stricken from the award because these are not taxable costs under 28 U.S.C. §
1920.  (See Pl.'s Br. at 31-35.)  Although it is true that these are not taxable costs, they are
recoverable as part of the attorney's fee award insofar as they are the sort of reasonable out-of-pocket
expenses that are normally charged to clients by attorneys.  (See supra Part III.A.8.)  I will strike
$202.39 from the award because computer-assisted legal research expenses are not recoverable in

---

[11] Grand Electric filed no response to the Electrical Funds' Bill of Costs.  (See ECF Nos.
187-188.)

this circuit.  See Standley v. Chilhowee R.-IV School Dist., 5 F.3d 319, 325 (8th Cir. 1993).  I find, however, that the remaining expenses sought by the Electrical Funds are reasonable.

In conclusion, I find that the Electrical Funds are entitled to recover attorney's fees in the amount of $20,847.42, plus expenses in the amount of $622.96, for a total award of $21,470.38.

**IT IS ORDERED** that:

1.   the Dakotas Funds' motion to seal, (ECF No. 175), the Electrical Funds' motion to seal, (ECF No. 180), and Grand Electric's motion to seal, (ECF No. 184), are denied;

2.   the Dakotas Funds' motion for attorney's fees, (ECF No. 176), is granted in part, and they are entitled to an award of attorney's fees and expenses totaling $27,818.69;

3.   the Electrical Funds' motion for attorney's fees, (ECF No. 181), is granted in part, and they are entitled to an award of attorney's fees and expenses totaling $21,470.38; and

4.   the Judgment will be amended to reflect these awards.

Dated December 21, 2011.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge

25